**POULTRY PROCESSING, INC.**

v.

**Sara MENDELSON, et al.**

Supreme Judicial Court of Maine.

Argued Sept. 18, 1990.
Decided Jan. 3, 1991.

Marshall Stern, Nancy J. White (orally), Bangor, for plaintiff.

Alfred C. Frawley, Shari B. Broder (orally), Brann & Isaacson, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

ROBERTS, Justice.

Sara Mendelson, Carl Mendelson and Dorothy Higer appeal from a judgment of the Superior Court (Waldo County, *Silsby*, J.) finding them jointly and severally liable to Poultry Processing, Inc. for $48,267.85 on a note plus $16,874.88 in attorney fees. The defendants contend that the court erred as a matter of law in ruling that the plaintiff was under no obligation to cash in two of the life insurance policies pledged as collateral for the note. Because we agree that the plaintiff had no such duty in the

circumstances of this case, we affirm the judgment.

The case was submitted to the court on an agreed statement of facts. In 1977, Maplewood Packing Co. of Belfast was a customer of Cumberland Cold Storage Co. of Portland, a division of Poultry Processing.[1] Poultry Processing extended credit to Maplewood for freezing and storage charges under a warehouse receipts financing arrangement. When Maplewood's credit reached about $200,000, the debt was secured by the execution of a promissory note dated June 14, 1977 in the amount of $214,000. The note was signed by James Mendelson, personally and as president of Maplewood. The note was also signed by Sara Mendelson, Carl Mendelson, Doris Mendelson and Dorothy Higer.[2]

On August 11, 1978, the defendants assigned to Poultry Processing ten life insurance policies as collateral for the principal balance owing on the note. Eight of the policies were pledged by the defendants individually, and two were pledged by Clements Chicks, Inc., an affiliate of Maplewood, acting through its president, James Mendelson. Under the terms of the assignment agreements, Poultry Processing obtained the exclusive right to surrender the policies for their cash value and to obtain loans or advances against them upon default.

On or about August 1, 1979, Maplewood and Clements Chicks filed under chapter 11 for bankruptcy. Maplewood made its last payment on the note at about this time, leaving a principal balance owing of $100,885. Two months later, Maplewood notified Poultry Processing by letter that the cash surrender value of the ten assigned policies at the time of the default was $126,311, an amount that exceeded the defendants' debt by $25,426. Maplewood also notified Poultry Processing that it was planning to invoke the policies' automatic premium loan provisions so that the premi-

---

1. Although Cumberland Cold Storage Co. was the original plaintiff in this action, Poultry Processing was substituted at trial as the real party in interest.

2. The five signatories to the note were the original defendants to this action. The action was dismissed as to James Mendelson, who died before trial. Doris Mendelson is not a party to this appeal.

ums and interest payments on existing loans would be paid automatically as they came due in order to protect Poultry Processing's interest.

By letter dated May 29, 1980, Poultry Processing advised the defendants that it would surrender eight of the pledged policies. Poultry Processing cashed in the eight policies and, on July 31, 1980, advised the defendants that it had collected $80,130.76.[3] Inexplicably, Poultry Processing never surrendered the remaining two policies owned by Clements Chicks. The insurer had informed Poultry Processing in February 1980 in response to its inquiry that the two policies had a surrender value of $25,410.93. The same insurer had also issued one of the eight policies that Poultry Processing did surrender.

In December of 1981, three months after Poultry Processing was informed by the insurer's agent that the value of the two policies had dwindled to $4,642.54 due to the automatic premium loan provisions, Poultry Processing brought suit on the note for $21,015.76 plus accrued interest and attorney fees. After trial without a jury, the court entered judgment for Poultry Processing, ruling that the plaintiff had not violated any contractual obligation or common law duty by its failure to obtain the cash surrender value of the two remaining life insurance policies.

The defendants contend on appeal that Poultry Processing owed them a duty to exercise reasonable care to preserve the value of the two remaining life insurance policies pledged as collateral for the note and that Poultry Processing breached its duty by failing to cash in the policies when their value was sufficient to pay off the amount owing on the note. They argue that case law, the Uniform Commercial Code, Title 11 M.R.S.A. (1964 & Supp.1990), and the *Restatement of the Law of Security* (1941) determine that the pledgee has a duty to obtain the cash surrender value of a life insurance policy. A fair reading of

these sources shows that their reliance is misplaced.

 Neither the common law of security nor the relevant provisions of the U.C.C. required Poultry Processing to obtain the cash surrender value of the life insurance policies in question. While section 17 of the *Restatement* affirms the duty of a pledgee to exercise reasonable care for the physical protection of the pledged object[4] the pledgee's duty to preserve and collect pledged claims outlined in section 18 of the *Restatement* does not render the pledgee "liable for a decline in the value of pledged instruments, *even if timely action could have prevented such decline."* *Restatement of the Law of Security* § 18, comment a (1941) (emphasis added). The defendants' reliance on *Grace v. Sterling, Grace & Co.,* 30 A.D.2d 61, 289 N.Y.S.2d 632 (1968), is likewise misplaced. First, the Appellate Division merely held that factual issues were present that precluded summary judgment. Second, the pledgee in *Grace* was accused of negligence for its failure to obtain common stock for convertible debentures having a face value of approximately one half the market value of the stock. That circumstance is very different from the case before us where the pledgors, themselves, triggered the decline in cash value of the policies. Moreover, the *Grace* case may not represent the majority view because of the absence in that case of any demand upon the pledgee by the owner-pledgor. *See, e.g., Hutchinson v. So. Cal. First Nat'l Bank,* 27 Cal.App.3d 572, 103 Cal.Rptr. 816 (1972); *Tepper v. Chase Manhattan Bank,* 376 So.2d 35 (Fla.App. 1979); *FDIC v. Air Atlantic, Inc.,* 389 Mass. 950, 452 N.E.2d 1143 (1983); *New Jersey Bank v. Toffler,* 139 N.J.Super. 161, 353 A.2d 116 (1976); *but cf. Dubman v. North Shore Bank,* 90 Wis.2d 226, 279 N.W.2d 455 (1979) (citing *Grace* with approval but following *Hutchinson* on the facts before the court).

---

**3.** Poultry Processing collected an additional $8,174.89 from two of the same eight policies in July of 1983 for reasons that are unexplained but not relevant to this proceeding.

**4.** For a discussion of the duties of a pledgee of collateral see *Livermore Falls Trust & Banking Co. v. Richmond Mfg. Co.,* 108 Me. 206, 79 A. 844 (1911).

■ Similarly the U.C.C. does not create an obligation on the part of the plaintiff to cash the insurance policies. Defendants correctly state that 11 M.R.S.A. § 9–104(7) specifically exempts "a transfer of an interest or claim in or under any policy of insurance" from the standard of "reasonable care in the custody and preservation of collateral" created in section 9–207(1). Defendants argue, however, that section 9–207 is incorporated by reference through the application of section 3–606. In particular defendants argue that Comment 5 to section 3–606 incorporates the standard of reasonable care of section 9–207.

Section 3–606 states that the holder of collateral "discharges any party to the instrument to the extent that without such party's consent the holder ... [u]njustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has the right of recourse." 11 M.R.S.A. § 3–606(1)(b). Comment 5 then explains that "[a]s to when a holder's actions in dealing with collateral may be 'unjustifiable'" the section on rights and duties with respect to collateral in the possession of a secured party (Section 9–207) should be consulted."

■ Assuming without deciding that defendants are correct in their contention, we hold, nevertheless, that the standard of care set forth by article 9 has not been breached in this case. We are not confronted with a case involving securities the value of which is beyond control of the parties. Here the defendants themselves instituted application of the automatic premium loan provisions of the life insurance policies that resulted in the decrease of the cash value while protecting the benefits under the policy and they so notified the plaintiff in 1979.

Contrary to the defendants' contention, the plaintiff had no duty to pay the premiums. The defendants never requested the surrender of the policies and application of the cash value to their obligation. *See Restatement of the Law of Security* § 52 (1941). Moreover, the plaintiff never misled the defendants into believing that all of the policies had been surrendered. Indeed, contrary to the defendants' contention, the letters to the defendants of May 29 and July 31, 1980 clearly disclosed that only eight of the policies had been surrendered. The defendants were aware, therefore, that two of the policies would continue to decline in cash value due to the premium loans. Whether the standard of care contained in 11 M.R.S.A. § 9–207 is incorporated into the provisions of 11 M.R.S.A. § 3–606 makes no difference. The plaintiff has not breached that standard.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ., concurring.

BRODY, Justice, dissenting.

Because I am persuaded that Poultry Processing had a duty to exercise reasonable care in preserving the cash surrender value of the two life policies in question under both the common law of security and the relevant provisions of the Maine Uniform Commercial Code, I respectfully dissent.

The trial court expressly found that the balance owing on the note would have been paid in full if the two policies had been surrendered in 1979 or 1980 along with the other eight policies. The court also found that there was no apparent reason on the record why all ten policies were not surrendered. These findings are not clearly erroneous and should not be disturbed on appeal. *Crowley v. Dubuc*, 430 A.2d 549, 552 (Me.1981).

At common law, although the pledgee of collateral for a note is not the insurer of the collateral, the pledgee nonetheless owes the pledgor a duty to exercise reasonable care to preserve the collateral. *Jenkins v. National Village Bank*, 58 Me. 275, 278 (1870); *Restatement of the Law of Security* § 17 (1941). "The care which the pledgee is required to exercise in connection with his possession of a pledged chattel is that which a reasonable man under like circumstances would recognize as necessary to prevent his conduct from creating

an unreasonable risk of harm to the pledgor's chattel." *Restatement of the Law of Security* § 17 comment b. As the Court observes, this rule of reasonable care pertains only to the physical care of the chattel. *Id.* comment a.

Insurance policies are not mere chattels, however, but "indispensable instruments" the pledge of which also pledges the property right represented. *Id.* § 1 comment e. "Where instruments representing claims of the pledgor against third persons are pledged, the pledgee has the *duty of using reasonable diligence to preserve and collect the claims or to enable the pledgor to undertake such preservation and collection.*" *Id.* § 18 (emphasis added). The pledgee's responsibilities thus "extend to the exercise of such care as a reasonably prudent pledgee would exercise under like circumstances to protect and preserve the validity and value of the securities." *Grace v. Sterling, Grace & Co.*, 30 A.D.2d 61, 64, 289 N.Y.S.2d 632, 638 (1968). A pledgee who violates this additional duty is similarly guilty of negligence. *Restatement of the Law of Security* § 18 comment a.

The facts reveal that Poultry Processing had notice of the cash surrender value of the two policies in issue at a time when there was enough value in them to pay all of the principal and interest owing on the note. Moreover, the Court's assertion that the defendants never requested the surrender of the policies and application of the cash value to their obligation is misleading. Although the record reveals no express request, there can be no doubt that such a request was implicit in the letter from Maplewood to Poultry Processing dated October 29, 1979. To conclude otherwise is to emphasize the inartful form of the letter over its only conceivable substance.

Poultry Processing also had notice of the fact that the cash surrender value of the policies was being depleted because of the automatic premium loan provisions invoked by the defendants without objection by Poultry Processing.[1] In addition, after the default, only Poultry Processing had the right to surrender the policies for their cash value. Although it cashed in eight of the ten policies pledged by the defendants, it did not cash in the other two, allowing them instead to become worthless for no apparent reason. This was a breach of Poultry Processing's common law duty to preserve the value of the collateral that it held.

The Court correctly points out that the pledgee is not liable for a decline in the value of a pledged instrument, even if timely action could have prevented it. *Id.* But the dissipation of the value of the two life policies in this instance was not due to vagaries of the market place beyond the control of Poultry Processing. Rather, the loss was a direct result of Poultry Processing's unexplained failure to collect the defendants' claims against the insurer, a violation of Poultry Processing's duty of reasonable diligence with respect to the preservation and collection of claims. In such a circumstance, the pledgor can set off the amount of his damages in any action against him by the pledgee. *Id.* § 20(2). Because the surrender value of the two remaining life policies was sufficient to pay off the note when the other eight policies were surrendered, and because Poultry Processing for no apparent reason failed to preserve or collect that value, Poultry Processing's claim against the defendants should be extinguished.

The defendants contend that they should also be discharged from their obligations on the note under the Maine Uniform Commercial Code. The relevant provisions of the Code generally follow the common law. Section 9–207(1) provides that "[a] secured party must use reasonable care in the custody and preservation of collateral in his possession." 11 M.R.S.A. § 9–207(1) (1964). The comment explains that this

---

1. The Court's assertion that the defendants themselves triggered the decline in the cash value of the policies is also misleading. When Maplewood notified Poultry Processing that it was planning to invoke the policies' automatic premium loan provisions in order to protect Poultry Processing's security interest, Poultry Processing was given the opportunity to object. The letter from Maplewood ended: "If this is not agreeable with you, please advise." Poultry Processing did not reply.

provision "states the duty to preserve collateral imposed on a pledgee at common law." *Id.* § 9–207 comment 1 (citing *Restatement of the Law of Security* §§ 17, 18); *see also Grace v. Sterling, Grace & Co.*, 30 A.D.2d at 64, 289 N.Y.S.2d at 638 ("This is the rule at common law and also under the Uniform Commercial Code.").

It is true that Article Nine of the Uniform Commercial Code generally does not apply to a "transfer of an interest or claim in or under any policy of insurance." 11 M.R.S.A. § 9–104(7) (Supp.1990).[2] It does not follow, however, as Poultry Processing urges, that all transactions involving insurance are outside the purview of the Code. Where, as here, the underlying transaction involves a negotiable instrument, the pledgee of an insurance policy is subject to the provisions of Article Three. Section 3–606 of the Maine statute provides that "[t]he holder discharges any party to the instrument to the extent that without such party's consent the holder, ... [u]njustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." *Id.* § 3–606(1)(b) (1964). The comment to section 3–606 incorporates by express reference the standard of reasonable care embodied in section 9–207(1) in explaining when a holder's action or inaction in dealing with collateral may be "unjustifiable." *Id.* § 3–606 comment 5.

Because Poultry Processing also breached its duty of reasonable care under the Maine Uniform Commercial Code, the defendants should be discharged from their obligations on the note under the Code as well as at common law. It is patently unfair to suggest that Poultry Processing could allow the security to be dissipated as a result of its own negligence and then recover the debt that would have been paid, but for that negligence, out of the proceeds of the security. Yet the Court today rewards Poultry Processing for its neglect and penalizes the defendants by requiring them to pay their debt twice. Accordingly, I would vacate the judgment and remand the case to the Superior Court for entry of judgment for the defendants.

---

**2.** The rationale behind this prohibition is that "[s]uch transactions are quite special, do not fit easily under a general commercial statute and are adequately covered by existing law." *Id.* § 9–104 comment 7 (1964).