FDIC

v.

Priscilla **CALIENDO.**

No. C–91–347–L.

United States District Court,
D. New Hampshire.

June 15, 1992.

Sarah Ruef Luck, Friedman & Babcock, Portland, Me., for plaintiff FDIC.

Daniel M. Cappiello, Shaheen, Cappiello, Stein & Gordon, Dover, N.H., for defendant Caliendo.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LOUGHLIN, Senior District Judge.

Before the court is plaintiff's Motion for Summary Judgment.

Defendant, Priscilla Caliendo executed a promissory note in favor of Maine National Bank, plaintiff FDIC's predecessor-in-interest, in exchange for a loan of $35,000.00. The loan was secured by the properly executed transfer and pledge of 1,890 shares of Fleet/Norstar common stock. The promissory note is a demand note. On July 18, 1990, Maine National Bank made demand for payment of all the principal as authorized by the terms of the demand note. Defendant did not comply and therefore defaulted. The bank declared defendant in default on July 31, 1990. The Fleet/Norstar stock was valued at $27.87 per share totaling $52,841.52 in July, 1990. When redeemed by Maine National Bank on August 17, 1990, the stock was valued at $15.25 per share for a total of $28,-914.00. Plaintiff was given possession and power of attorney to redeem the stock at any time. At issue is whether plaintiff as pledgee has a duty to protect the value of the collateral in its possession.

Plaintiff maintains that under Maine law which is controlling in this matter, no duty exists requiring a pledgee to preserve the value of collateral pledged as security for a loan. In support of this contention, plaintiff cites the following case, *Poultry Pro-*

*cessing, Inc. v. Mendelson,* 584 A.2d 659 (Me.1991).

The facts of *Poultry* are as follows. Defendant corporation as obligor on a note, assigned ten life insurance policies as collateral to cover the principal balance on the note. Plaintiff corporation was given the exclusive right to surrender the policies for their cash value and could obtain loans or advances against them upon default. *Mendelson,* 584 A.2d at 660. Upon default, defendant invoked the policies' automatic premium loan provision which results in the automatic payment of premium and interest payments on existing loans. At the time of default, the cash surrender value of the policies exceeded the existing debt.

Subsequently, plaintiff surrendered eight of the ten policies and collected an amount less than the existing debt. Plaintiff was informed at the time of surrender that the cash surrender value of the two remaining policies exceeded the value of the reduced but still existing debt. Plaintiff nevertheless did not surrender the policies. Upon notice that the value of the two remaining policies had dwindled substantially due to the automatic premium loan provisions, plaintiff surrendered the final two policies and brought suit for the deficiency. After a bench trial, the court held that plaintiff did not breach any contractual obligation or violate any common law duty.

Defendants appealed claiming plaintiff owed defendant a duty to exercise reasonable care to preserve the value of the pledged collateral as found in the common law, the Uniform Commercial Code, Title 11, M.R.S.A. (1965 & Supp.1990), and the Restatement of the Law of Security (1941). The Supreme Judicial Court of Maine upheld the lower court's judgment and stated that there is no duty to preserve the value of pledged collateral under any of the three sources of law cited by the defendant. The facts of *Poultry* are exceptionally similar to the instant matter which could lead to the apparent conclusion that no duty exists in the present case. However, closer scrutiny of the facts as well as the applicable law makes it apparent that *Poultry* is sufficiently distinguishable from the instant

matter to render *Poultry* uncontrolling and unpersuasive.

The one factual element that clearly distinguishes *Poultry* from the instant matter involves the variation in the types of collateral used to secure the loans. *Poultry* involved insurance policies as collateral. Investment securities are involved in the present matter. It is this difference in the collateral used which initially governs whether a duty is imposed under one possible source of this duty found in the Uniform Commercial Code (Code).

One source of the pledgee's duty of reasonable care is found in Me.Rev.Stat.Ann. tit. 11 § 9–207(1) (West 1964 & Supp.1991). In order for this duty to be imposed the transaction must fall within the meaning of U.C.C. Art. 9 as adopted by the Maine Legislature. It is clear that section 9–104(7) specifically exempts "a transfer of an interest or claim in or under any policy of insurance ..." from the requirements and duties codified in Article 9. Me.Rev. Stat.Ann. tit. 11 § 9–104(7) (West 1964 & Supp.1991). The security transaction in *Poultry* is unquestionably outside the scope of Article 9. Application of the Article 9 requirements to the collateral in the instant case however produces the opposite result.

The applicable provisions of article 9 are as follows:

§ *9–102,* **Policy and Scope of Article**

    (1) ... Except as otherwise provided in § 9–103 on multiple state transactions and in § 9–104 on excluded transactions, this Article applies so far as concerns any personal property and fixtures within the jurisdiction of this State

        (a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including ... instruments....

Me.Rev.Stat.Ann. tit. 11 § 9–102 (West 1964 & Supp.1991).

A security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Me.Rev.Stat.Ann. tit. 11 § 1–201(37) (1964 & Supp.1991). An instru-

ment is defined as ... a security (defined in section 8–102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment.... Me.Rev.Stat.Ann. tit. 11 § 9–105(g) (1964 & Supp.1991).

A security, or more specifically a certificated security is defined as:

a share, participation, or other interest in property of or an enterprise of the issuer or an obligation of the issuer which is:

(i) Represented by an instrument issued in bearer or registered form;

(ii) Of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

(iii) Either one of a class or series or by its terms divisible into a class or series of shares, participations, interests or obligations.

Me.Rev.Stat.Ann. tit. 11 § 8–102(1)(a) (Supp.1991).

■ The first issue is whether the stock pledged as collateral is a security and in particular a certificated security for purposes of the Code. The stock in question consists of Fleet/Norstar Bank common stock that is traded on the New York Stock Exchange. This stock is clearly within the meaning of section 8–102(1)(a)(ii) and (iii). What is not clear from the record is whether the stock was issued in bearer or registered form as required by section 8–102(1)(a)(i). It would seem reasonable to conclude that any stock traded on the New York Stock Exchange and subject to the auspices of the Securities and Exchange Commission would be issued in either bearer or registered form. The court will not make this finding but reserve this issue for a later date when evidence pertinent to this issue can be submitted by the parties to the

court. To continue this examination, the court will assume the stock was issued in bearer or registered form thereby meeting the requirements of section 8–102(1)(a)(i). Accordingly, the court considers the stock to be a security for purposes of Article 8 and an "instrument" for Article 9 purposes by virtue of meeting the definition of security under Article 8. *See In re Kontaratos,* 10 B.R. 956 (Bkrtcy.D.Me.1981).

■ Assuming the stock collateral is as an instrument for Article 9 purposes, the next query is whether the loan transaction was intended to create a security interest in personal property or fixtures. Reviewing the document used to evidence the security agreement, it is clear that the transaction was intended to create a security interest. The document is entitled "Maine National Bank Security Agreement" and recites the various duties and liabilities associated with the security arrangement. The court finds that the transaction was intended to create a security interest.

The next hurdle that must be negotiated before the provisions of Article 9 can be invoked is whether the pledged collateral fits any of the exemptions found in section 9–104. The loan transaction does not fall under any of the enumerated exemptions thus Article 9 applies to the transaction.

The last matter at issue concerning whether Article 9 applies is whether the provisions of Section 9–103 apply thereby affecting the choice of law governing this transaction.

The only subpart of Section 9–103 that may be applicable is 9–103(1) which deals with the matter of perfection. However, this issue does not have to be resolved since under any scenario,—whether Maine's or New Hampshire's perfection provision must be followed—one means of perfecting a security interest in an instrument, the method used in this matter, is by possession [1]. *See* Me.Rev.Stat.Ann. tit. 11

---

**1.** This issue could also be resolved if fully addressed by invoking section 1–102(3) in conjunction with section 1–105(1) which allows the parties within certain limitations (omitted here for simplicity) to agree to have the transaction governed by the laws of a state to which the trans-

action bears a reasonable relationship. The parties have agreed that Maine law will control the transaction. Maine clearly bears a reasonable relationship to this transaction as the bank is situated in Maine and therefore subject to Maine law.

§§ 9–203(1)(a), 9–304(1) and 9–305 (West 1964 & Supp.1991); N.H.Rev.Stat.Ann. §§ 382–A:9–203(1)(a), 382–A:9–304(1), and 382–A:9–305 (Equity 1961 & Supp.1991).

Having met all the aforementioned requirements, this loan transaction involving corporate stock as collateral is a transaction subject to the provisions of Article 9 and in particular Section 9–207.

Section 9–207 entitled **Rights and duties when collateral is in secured party's possession** reads in relevant part:

(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession ...

Me.Rev.Stat.Ann. tit. 11 § 9–207(1) (1964 & Supp.1991).

The code does not define "reasonable care." Rather, the Uniform Commercial Code Comment to § 9–207(1) as adopted by Maine states that the duty imposed on a pledgee is the same as the duty imposed at common law. The Restatement of Security is cited as the authority reciting the common law duty.

Section 17 of the Restatement of Security states: "[t]he pledgee owes to the pledgor the duty of reasonable care of the pledged chattel...." *RESTATEMENT OF SECURITY* § 17 (1941). Comment a to Section 17 limits the duty of reasonable care to the physical care of the chattel. However, Comment a also states that with regard to instruments, the pledgee has other duties in certain circumstances and cites section 18 as an example. Section 18 provides that, "where instruments representing claims of the pledgor against third persons are pledged, the pledgee has the duty of using reasonable diligence to preserve and collect the claims or to enable the pledgor to undertake such preservation and collection. *Id.* § 18. Section 18 is couched in terms that relate to negotiable instruments and not investment securities thus neither the section nor its comments are of any significant use in defining the duty imposed upon a pledgee of investment securities. Comment, *Pledged Securities— The Pledgee's Duty to Preserve Value Under the Uniform Commercial Code*, 62 Marq.L.Rev. 391, 394 (1979). *See also* G. Gilmore, *Security Interests in Personal Property*, 1135, § 42.3 (1965). (language found in the second sentence of § 9–207(1) relates to a negotiable instrument situation and does not effectively address the investment security situation.)

What is relevant to defining the duty imposed is Comment b to § 17 which reads:

The care which the pledgee is required to exercise in connection with his possession of a pledged chattel is that which a reasonable man under like circumstances would recognize as necessary to prevent his conduct from creating an unreasonable risk of harm to the pledgor's chattel.

Restatement of Security § 17, Comment (1941). Application of this reasonable man standard to the actions of pledgees in possession of pledged collateral could extend the duty to preserve merely the physical quality of pledged collateral.

This reasonable man standard is not defined further within the restatement. Moreover, its application where investment securities are involved is amorphous at best requiring the courts to add needed shape and definition. Both the Code and the Restatement fail to provide a clearly defined duty in the case where investment securities are involved. What is clear is that there is a duty to preserve the physical condition of the collateral regardless of its form or type. With tangibles this duty is logical and reasonable. The value of the goods, such as livestock or even jewelry mentioned in the restatement is closely associated with the physical condition of the goods. With respect to investment securities though, the value of the security is not closely related to its physical condition but rather to marketplace dynamics that cannot be controlled or affected by the holder of rights evidenced by the investment security. The value of the security is ultimately realized only upon its transfer or redemption. *See Comment, Pledged Securities—The Pledgee's Duty to Preserve Value under the Uniform Commercial Code*, 62 Marq.L.Rev. 391, 394 (1979).

The foremost consideration in the eyes of the law should be the protection of the value of the collateral no matter what form

the collateral may take. To impose a duty to protect the value of one form of collateral—tangibles—and not impose a similar duty to protect the value of investment securities solely based on the criteria of form is nonsensical and moreover inequitable. This does not mean to say that the court does not realize the difficulty in defining the duty or the difficulty in imposing such a duty. Whether a duty to protect the value of investment securities exists is dependent upon how the courts have defined the reasonable man standard found in the restatement relative to the situation involving investment securities as collateral. Also of necessity in finding this duty is how the courts have defined the scope of the reasonable care standard found in the Code in relation to the same collateral.

The *Poultry* court did make brief mention of the secured investment situation. *Poultry*, 584 A.2d at 662. However, the court did not delve into the matter sufficiently to provide this court with a sound pronouncement of Maine's stance on the issue. The Maine Courts have not confronted this particular issue, therefore the common law and statutory positions of other jurisdictions will have to be investigated.

What becomes apparent in reviewing the law throughout the various states is that cases involving securities as collateral fall into two broad categories. The first category involves stocks or bonds that must be exchanged or acted upon in some way in order to preserve their value, e.g. conversion of bonds into stock. The instant matter does not fall within this category. However, the category does provide insight into the court's efforts in defining this duty thus review of these cases is a worthwhile endeavor for purposes of the present matter.

In *Reed v. Central National Bank of Alva*, 421 F.2d 113 (10th Cir.1970), the Tenth Circuit Court of Appeals was confronted with an action involving a loan secured by convertible debentures. The conversion date deadline for the debentures occurred while the loan was still outstanding. Knowing the value of the debentures was closely tied to their conversion into common stock, the pledgor gave the pledgee advance notice of the conversion date. Pledgee bank allowed the conversion deadline to pass without taking any action due in large part to inadvertence. As a result, the collateral was substantially downgraded in value causing the pledgee to seek further collateral which was not forthcoming. The pledgee's lawsuit followed.

The court reviewed the security agreement and the applicable law. The agreement provided the pledgee with broad discretion in handling the collateral with few, if any, duties. Of significant importance was the lack of any duty to convert in the agreement. Pledgor argued that the pledgee breached its duty of reasonable care as codified in Oklahoma's version of U.C.C. Section 9–207(1). Pledgee responded by arguing that the security agreement effectively exculpated the pledgee from taking action. The Tenth Circuit disagreed. Particular attention was paid to Oklahoma's version of U.C.C. § 1–102(3) which provides that a security agreement could modify the duty of reasonable care only by establishing the standards used to define the duty. The court held that the provisions purporting to exculpate the pledgee did not constitute such standards. Accordingly, the court found that the pledgee breached its duty of reasonable care under § 9–207(1) by failing to act or notify pledgor of pledgee's inaction following receipt of notice of the conversion date from pledgor. Pledgor's notice to pledgee played a paramount role in the *Reed* decision finding a duty to preserve the value of the pledged collateral. This notice which under certain factual settings make take the form of a reasonable demand to sell is a factor of significant importance to the instant matter as will be discussed, *infra.*

Another case in the first category will be examined as it states pertinent aspects of the general rule concerning the duty of a pledgee to preserve collateral. In *Grace v. Sterling Grace & Co.*, 30 A.D.2d 61, 289 N.Y.S.2d 632 (1968), the court stated that

> [w]here commercial paper or other securities are placed in the custody and control of the pledgee, it is clear that his

responsibility is not limited solely to the physical preservation of the same. His responsibilities extend to the exercise of such care as a reasonably prudent pledgee would exercise under like circumstances to protect and preserve the validity and *value* of the securities. *Id.* 289 N.Y.S.2d at 638 (emphasis added)

The court continued by stating that this is the rule under the common law and the Uniform Commercial Code and that the duty arises as a result of the possession and control of the pledged collateral. *Id.* at 638.

The *Grace* court followed this by providing the parameters necessary to define the duty of care. The list of elements included the nature and value of the property, the means of protection possessed by the bailee/pledgee, the relation of the parties and other circumstances that were neither enumerated nor defined. *Id.* at 539 (citations omitted). Furthermore, the court stated that

[t]he pledgee is required to exercise that diligence which persons of common prudence usually bestow towards such property or upon their own property at the time and place in question and under like circumstances, or, if the pledge be to bankers or others whose vocation implies skill or unusual facilities, such diligence as those commonly prudent of that class are wont to observe in such affairs.

*Id.* at 639–640 (citations omitted)

With this standard in mind, the court stated that a reasonably prudent banker having control of the securities would proceed in such a fashion so as to preserve the value of its security interest for its benefit as well as for the benefit of the owner. *Id.* at 641.

*Grace* is distinguishable from the instant matter in that convertible debentures are involved as opposed to common stock. However this difference does not negate the relevance and applicability of the duty as defined by the *Grace* court in the instant matter.

In reviewing the cases in the first category, it becomes apparent that the courts have not been reluctant to impose a duty

upon the pledgee to take action to preserve the value of investment securities used as collateral subject to certain conditions that arise based upon the particular nature of the securities involved. The two cases reviewed in this category sufficiently cover the elements of fact and law that are pertinent to the present matter thus review of other cases in this category will not be conducted. For a more thorough discussion of the first category see James H. Gormley, Jr., *Pledged Securities—The Pledgee's Duty to Preserve Value Under the Uniform Commercial Code*, 62 Marq. L.Rev. 391 (1979).

Attention is now shifted to the second category of cases that involves the situation present in the instant matter—pledged securities declining in value due to market forces beyond the control of the parties. The courts have confronted this issue with substantially different results.

In the case of *Capos v. Mid–America Nat. Bank of Chicago*, 581 F.2d 676 (7th Cir.1978), the Seventh Circuit visited the issue whether a pledgee has a duty to sell collateral stock of declining value. The court examined both the Uniform Commercial Code and the Illinois common law in reaching its decision. As to the Uniform Commercial Code, the court found that neither the Code nor the official comment which cites the Restatement of Security, supports the contention that the duty exists. In particular, the court recited Official Comment a to section 18 of the Restatement which provides that the pledgee is not liable for the decline in value of a pledged instrument (securities) regardless of whether timely action could have prevented such decline. *Capos*, 581 F.2d at 681. The district court in *Capos* felt that by giving the statutory language its natural and apparently intended meaning and not imposing the duty created a harsh result that is not in sync with present day commercial realities. The appeals court felt otherwise. They concluded that the debtor is the investor and could always seek investment advice to protect its investment. *Capos*, 581 F.2d at 681. Also of note in relation to the present matter is

plaintiff Capos' failure to make demand on the bank to sell the securities. The court did not state that this be made a mandatory requirement but indicated this as being a cause of contributory negligence on the part of Capos.

In similar fashion, the United States District Court for the Eastern District of Tennessee, examined Tennessee's version of the Uniform Commercial Code and concluded that there is no duty to sell collateral stock of declining value. *Federal Deposit Ins. Corp. v. Webb*, 464 F.Supp. 520 (E.D.Tenn.1978). The courts of Tennessee like the courts of many other states refer to the Restatement of Security to define the reasonable care standard found in Section 9–207. The *Webb* court focused its attention on comment a to Section 18 of the Restatement of Security which provides that a pledgee is not liable for the loss of value of collateral due to a declining market. However, the court appears to have carved out an exception to the no duty rule by stating that there is a duty to sell if the terms of the note provide for the pledgee to ·take action to preserve the collateral upon request by pledgor and a reasonable request to sell is made by the pledgor. The *Webb* court does not elaborate but shifts gears and discusses how a duty to notify the pledgor of declining stock value could arise.

In addressing the concern raised in *Capos* relating to the fear of requiring a pledgee to be an investment advisor, the *Webb* court advanced one possible view of the facts which would result in the pledgee holding itself out as an investment advisor thereby assuming a duty to notify the pledgee of any decline in stock value. Specifically, the *Webb* court suggests that a pledgee could make certain representations, e.g., the soundness of an investment, · in order to induce the debtor to invest, that would place the pledgee in the position of an investment advisor with its attendant duties. The court further indicates that pursuant to U.C.C. § 9–207 (as adopted by Tennessee and similarly by Maine), the parties can define by contract the duty of care in a manner not manifestly unreasonable. Reference will be made *infra* regarding

the significance of the contractual agreement in relation to imposing this duty as well as the affect a reasonable request to sell may have on the present matter.

In *FDIC v. Blue Rock Shopping Center*, 567 F.Supp. 952·(D.Del.1983), the defendant argued that the receipt of additional collateral for an outstanding loan imposed a fiduciary duty upon plaintiff's assignor (the bank which issued the loan) and now plaintiff as assignee to preserve the collateral for the defendant. The court reviewed the assignment of lease constituting the additional collateral and concluded that there is no express agreement calling for the imposition of a fiduciary duty upon plaintiff (or predecessors-in-interest). The court stated that ·absent an agreement imposing a greater duty, a creditor will be held to a duty to exercise reasonable care for the security's preservation. In *Blue Rock*; plaintiff's assignor refused to accept a settlement offer from a third party lessee in exchange for the surrender of the third party's lease held by assignor. The settlement offer was less than one-third the amount owed assignor by the third-party lessee. Therefore the collateral was substantially less in value than the obligation. When the collateral has less value than the obligation, the pledgee cannot be held liable for refusing to sell the pledged collateral. *Blue Rock*, 567 F.Supp. at 956. Citing *Fidelity Bank & Trust Co. v. Production Metals Corp.*, 366 F.Supp. 613· (E.D.Pa. 1973), discussed *infra*, in support of this rule, the *Blue Rock* court held as a matter of law that plaintiff did not breach its duty to exercise ordinary care to preserve the collateral.

Confronted with facts similar to *Blue Rock*, the United States District Court for the Eastern District of Pennsylvania in the *Fidelity case* cited *supra*, held that, pursuant to New Jersey law which controlled the matter before the court, the pledgee bank did not breach its obligation to preserve the value of the stock given as collateral. Of particular importance to the present matter is the *Fidelity* court's conclusion that the courts of New Jersey if presented with the appropriate case would find a duty to pre-

serve the value of the collateral under New Jersey's version of U.C.C. § 9–207(1). The duty, as defined by the *Fidelity* court, was made dependent on the particular facts of the case:

Where the value of the collateral exceeds the amount of the debtor's entire obligation to the secured party, there is no justification for a rule authorizing the pledgee to disregard the pledgor's interest in the collateral and deprive him of the right to control its disposition for the benefit of both parties. In such a situation, where a secured, upon request of the pledgor, fails to take steps to preserve the value of the collateral, a question should properly be raised as to whether the pledgee has exercised reasonable care under the circumstances. On the other hand, where the value of the collateral is less than the amount of the total obligation of the debtor to the secured party, the case is different. In such a situation, the value of the collateral is critically related to the pledgee's security interest and absent a tender of the deficiency to the pledgor, the pledgee's exclusive right to control the disposition of the collateral is, in itself, reasonable. At the very least, it may provide the only leverage available to encourage the debtor to repay the debt in full.

*Fidelity*, 366 F.Supp. at 618

The facts of *Fidelity* were that the value of the collateral pledged was less than the amount of the total obligation of the debtor therefore the *Fidelity* court held that the pledgee bank did not breach its duty of reasonable care to preserve the *value* of the collateral.

Soon after the *Fidelity* decision was rendered, the New Jersey courts were presented with the issue whether a duty existed requiring the pledgee to preserve the value of the pledged collateral. In *New Jersey Bank v. Toffler*, 139 N.J.Super. 161, 353 A.2d 116 (App.Div.1976), the Appellate Division of the New Jersey Superior Court held that there is no duty to preserve the value of the collateral absent a reasonable demand to sell by pledgor and a showing of negligence and/or bad faith on the part of pledgee.

In *Toffler*, the value of the securities used as collateral to secure a loan fell below the allowable margin due to stock market forces. The pledgee bank demanded additional collateral or in the alternative, repayment of the loan. The pledgee apparently attempted to notify the pledgor of the drop in the stock's value with little or no success. Without any response from the pledgor, pledgee sold the collateral giving rise to a substantial outstanding loan balance. Pledgee sued for the balance. Pledgor counterclaimed arguing breach of the duty to preserve the value of the collateral.

The *Toffler* court reviewed the New Jersey case law as well as the applicable U.C.C. statutory provisions as adopted by New Jersey and held that under the common law and U.C.C. § 9–207(1), there is no duty to preserve the value of pledged collateral unless: (1) a reasonable demand to sell is made by pledgor to pledgee and (2) proof is submitted establishing bad faith or negligent refusal to sell after demand. The facts of *Toffler* were such that neither of the two prongs were met thus the duty was not imposed. Nevertheless, the court did not rule that such a duty does not exist. Rather, whether the duty is imposed is dependent on the particular circumstances of each case.

■ This court agrees with the rationale used by the *Fidelity* court and believes that the Courts of Maine if confronted with the appropriate case, i.e., pledgor pledges collateral in excess of the total debt obligation, the Maine Courts would find a duty to preserve the value of the collateral under the reasonable care standard found in Me.Rev.Stat.Ann. tit. 11 § 9–207(1) (West 1964 & Supp.1991).

Based upon the preceding analysis, the pledgee has a duty to exercise reasonable care to preserve the value of the pledged collateral. However, the scope or broadness of this duty is contingent upon specific factual situations and is subject to exception.

■ In order to impose this duty, the court must be presented with a situation involving an overcollateralized loan. Fur-

thermore, action or specifically sale or redemption of the stock collateral will not be required absent: 1. a default by the pledgor/borrower and 2. the receipt of a reasonable request by the pledgor/borrower to either sell or have the stock redeemed. Pledgor's failure to make this request in a timely manner, following default will preclude the court from finding the pledgee to be in breach of this duty. Whether a request is timely made will be determined on a case by case basis. If a reasonable request to sell is made by the pledgor, the pledgee must take the appropriate action in a timely fashion. Whether the action taken is appropriate and timely can only be determined again, on a case by case basis.

■ This duty, as aforementioned, defines the scope of the duty of reasonable care found in section 9–207(1) when presented with a case involving an overcollateralized loan. Further reading of section 9–207(1) however, presents the possibility that this duty may be contractually altered. Specifically, the parties may define the duty by agreement provided that the duty as defined is not manifestly unreasonable. Me.Rev.Stat.Ann. 11 § 9–207 (U.C.C. Comment 1) (West 1964 & Supp.1991). Moreover, the secured party may operate the collateral to preserve the collateral or its value or act upon the collateral as provided by agreement. Me.Rev.Stat.Ann. 11 § 9–207(4) (West 1964 & Supp.1991). However, the agreement reached by the parties cannot disclaim the duty of care found in section 9–207(1). Me.Rev.Stat.Ann. 11 § 9–207 (U.C.C. Comment 4) (West 1964 & Supp.1991).

■ Having established the duty, the facts of the present matter will be reviewed in light of the summary judgment standard set forth *infra*, in order to determine whether the duty should be imposed upon the plaintiff, FDIC.

When a party to an action moves for summary judgment,

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c) (1991)

> As to materiality ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [Moreover] summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The loan issued by plaintiff's predecessor-in-interest, Maine National Bank, was in the amount of $35,000. The pledged collateral, Fleet/Norstar common stock, had a value of approximately $53,000 at the time of default. It seems apparent that the loan was substantially overcollateralized. However, it is unclear whether the bank discounted or reduced the collateral's stated value by either statutory mandate or inter-office policy as a hedge against any possible fluctuations in the stock market. It is possible that the collateral was reduced in value to the extent that an overcollateralized loan situation has not manifest itself. Whether the loan is overcollateralized is a genuine issue of material fact that must be known with complete certainty before the court may impose the duty to preserve the value of collateral upon the plaintiff FDIC. Since it is unclear whether an overcollateralized loan is extant, summary judgment will not properly lie in this matter. Although it is not necessary to go beyond this point to make a final decision on this summary judgment motion, the court is inclined to continue.

Another issue that arises is whether a reasonable demand was communicated to the bank by the defendant to sell the stock immediately following the declaration of default. Again, a genuine issue of material fact that cannot be answered based upon the pleadings, motions, etc. that have been filed in this case—another ground to preclude summary judgment. Likewise, it is

unclear whether the parties successfully agreed to define this duty in the security agreement since the copy of the agreement appended to plaintiff's motion is incomplete.

Before rendering a final decision in this matter, the court is compelled to expand upon its rationale for defining the duty of reasonable care to preserve the value of the pledged securities. As indicated by other courts confronted with this issue, the court is hesitant to place the pledgee in the position of an investment advisor or insurer of the securities pledged. By placing very specific factual requirements upon imposition of the duty, the court is of the opinion that the undesired result of placing the pledgee in this untoward position has been avoided. Rather, the court is of the opinion that an appropriate result is achieved which is self-evident when taking into account the driving force behind imposing such a duty on a pledgee, the simple but omnipresent notions of fairness and equity. It is not beyond the realm of reality to envision situations in which a pledgor could be required to withstand catastrophic financial losses due to a narrow application of both the Uniform Commercial Code and the common law rules. *Fidelity*, 366 F.Supp. at 618. Such a result may very well be avoided in the present matter if the facts are such that imposition of the duty is warranted. Moreover, by defining this duty to be applicable to situations involving investment securities as collateral subject to specific requirements, the court effectively bridges the gap created within the common law that results when the duty is imposed to protect one form of collateral but not all forms of collateral.

Protecting the value of the collateral is the paramount consideration in imposing this duty on a pledgee. By imposing this duty on a pledgee holding investment securities as collateral subject to specific conditions, a cohesive evenhanded approach to imposition of this duty results that both protects the value of pledged collateral regardless of form while providing the pledgee relief from the duty should it be found that the precise factual conditions necessary to impose the duty have not been met.

Plaintiff may well argue that it is the vagaries of the marketplace over which a pledgee has no control that makes imposition of the duty harsh and overly burdensome. Plaintiff's argument is not without merit. However, it is plaintiff's knowledge of the marketplace dynamics that justifies requiring a pledgee to act expeditiously so as to protect that portion of the collateral for which the pledgee is not entitled to retain upon default.

In the overcollateralized loan scenario, the pledgor maintains an important interest in the collateral, even after default. In essence, by imposing this duty, the court is enabling the pledgee to retain some control over its interest in the collateral. The resultant diminution of control over the collateral held by the pledgee is a small burden when compared to the potentially catastrophic result a pledgee may face without imposition of such a duty.

For the aforementioned reasons, plaintiff's motion for summary judgment is hereby denied.