

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2000

# Solfanelli v. Core States Bank

Precedential or Non-Precedential:

Docket 99-3117

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Solfanelli v. Core States Bank" (2000). *2000 Decisions*. Paper 14.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/14

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 31, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3117

JOSEPH R. SOLFANELLI;
NATALIE G. SOLFANELLI

v.

CORESTATES BANK N.A., successor by
merger to Meridian Bank;
STEVENS & LEE

MERIDIAN BANK,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 97-cv-00160)
District Judge: Honorable Thomas I. Vanaskie

Argued September 13, 1999

Before: MANSMANN, McKEE and STAPLETON,
Circuit Judges.

(Filed: January 31, 2000)

Edward F. Mannino, Esquire
 (Argued)
David L. Comerford, Esquire
Akin, Gump, Strauss, Hauer & Feld
2005 Market Street
Suite 2110
Philadelphia, PA 19103

 COUNSEL FOR APPELLEE
 JOSEPH SOLFANELLI

John H. Doran, Esquire
Doran & Nowalis
69 Public Square
700 Northeastern Bank Building
Wilkes-Barre, PA 18701

 COUNSEL FOR APPELLEE
 NATALIE G. SOLFANELLI

David T. Sykes, Esquire (Argued)
Duane, Morris & Heckscher
4200 One Liberty Place
Philadelphia, PA 19103-7396

 COUNSEL FOR APPELLANT

OPINION OF THE COURT

MANSMANN, Circuit Judge.

This case appeal arises from an order of the District Court entered January 22, 1999 in connection with a Chapter 11 bankruptcy on behalf of debtors Joseph R. and Natalie G. Solfanelli. Of the numerous assertions made at the outset of this litigation, only two major issues remain. The principal issue is whether the Solfanellis' secured creditor, Meridian Bank ("Meridian"), is barred from pursuing a deficiency claim against the Solfanellis as a result of its conduct in connection with its disposition of the primary collateral securing the Solfanellis' debt. The District Court concluded that (1) Meridian's eleven month delay in selling the stock was commercially unreasonable, and that (2) Meridian's handling of a claim against Keefe,

Bruyette, and Woods, the broker Meridian retained to sell the FEB stock, which claim was based upon Keefe, Bruyette, and Woods' undisclosed purchase of the major portion of the FEB stock and resale two days later at a substantial profit, was also commercially unreasonable.

Meridian challenges this decision, arguing that the Solfanellis did not have any cognizable interest in the Keefe, Bruyette, and Woods settlement. The Solfanellis argue that their indebtedness to Meridian should be deemed satisfied on the grounds that the delay in selling the stock was commercially unreasonable.

We agree with the District Court that the Solfanellis' argument is meritorious. We also find that the District Court did not err in finding that Meridian acted in a commercially unreasonable manner when it negotiated a resolution of its claim against Keefe, Bruyette, and Woods without first notifying the Solfanellis, and then attempted to disguise the transaction.

We are called upon, also, to consider whether Meridian violated the Bankruptcy Code's automatic stay in garnishing accounts containing post-petition funds. Meridian contends that it could garnish these accounts by virtue of the parties' Stipulation and Security Agreement ("Agreement"). We agree, however, with the District Court, that the automatic stay was violated because the parties' Agreement did not authorize the attachment of post-petition funds. Furthermore, we find that the District Court properly upheld the award to the Solfanellis of punitive damages in the amount of $10,000 for the violation of the automatic stay. Because this case is already the subject of two published opinions, each exhaustively setting forth the procedural and factual background, we will not do so here, but instead refer interested parties to these prior dispositions.[1] We set forth only those facts crucial to a resolution of the disputes here.

_____

1. The District Court's ruling is reported at 230 B.R. 54 (M.D.Pa. 1999); the Bankruptcy Court's ruling is reported at 206 B.R. 699 (Bankr. M.D.Pa. 1996).

I.

We have appellate jurisdiction over the District Court's decision pursuant to 28 U.S.C. SS158 (d) andS1291. We are, in effect, the second "appellate" court to consider the bases of the Bankruptcy Court's opinion. In undertaking our review, we stand in the shoes of the District Court, applying a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to that court's legal conclusions. In re Krystal Cadillac Oldsmobile GMC Truck, 142 F.3d 631, 635, (3rd Cir. 1998); In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994) (citations omitted).

The major question we address is whether the District Court erred in holding that Meridian's sale of the FEB shares was improperly conducted. Its outcome hinges on whether two aspects of Meridian's handling of the collateral were commercially reasonable under Pennsylvania law: (1) Meridian's retention of the FEB shares for 11 months prior to the sale through Keefe, Bruyette, and Woods; and (2) Meridian's handling of the claim against Keefe, Bruyette, and Woods.2 Pennsylvania law provides as follows for the disposition of collateral:

> (c) Manner of disposition. -- Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

13 Pa.Cons.Stat.Ann. S 9504 (emphasis added). We agree with the District Court that the test to determine "commercial reasonableness" should be whether the sale's every aspect is characterized by: (1) good faith, (2) avoidance of loss, and (3) an effective realization. United States v. Willis, 593 F.2d 247, 259 (6th Cir. 1979). We also

_____

2. In light of our decision in the Solfanellis' favor, we decline to address
whether Meridian elected strict foreclosure on the collateral. This alternative ground for recovery was fairly presented to and rejected by the District Court.

4

agree with the District Court that, in liquidating the collateral, the creditor acts as the debtor's fiduciary and has a corresponding good faith duty to maximize the proceeds of the collateral's sale. United States ex rel. Small Bus. Admin. v. Chatlins Dep't Store, 506 F. Supp. 108, 111 (E.D. Pa. 1980).

Here, the Solfanellis question the commercial reasonableness of the sale, and the burden falls to Meridian to show the sales' commercial reasonableness under the "totality of the circumstances." Savoy v. Beneficial Consumer Discount, 503 Pa. 74, 77 (1983). Wefind that Meridian has not met this burden. Meridian justifies its failure to sell the stock upon (1) Mr. Solfanelli's refusal to consent to the sale of the stock by Meridian, and (2) the terms of the parties' Stipulation and Security Agreement. Moreover, Meridian insists, as the Bankruptcy Court held, that Mr. Solfanelli's failure to demand a sale of the stock precludes any claim based upon the untimeliness of the sale.

When Meridian sought Mr. Solfanelli's agreement to sell the shares in early 1991, he declined to give his consent. Moreover, it is undisputed that Mr. Solfanelli did not at any point demand that the shares be sold. Neither of these facts, however, has the significance that Meridian would attribute to it. First, we note that the undisputed record evidence indicates that the Solfanellis made no request that the stock be held at any point between March 1991 and the end of January 1992, from our point of view the crucial period for present purposes. Moreover, even if such a request had been made, it would be only one factor in determining the commercial reasonableness of the sale and would not preclude liability if the totality of the circumstances indicated that the sale was commercially unreasonable.

Ultimately, Meridian's argument regarding the debtor's requests is a red herring. In reality, rather than trying to honor a debtor's request through forbearance, Meridian focused on the risk that the FEB shares' value might fall below the loan balance. After Meridian focused on that, there were repeated days when the stock sold for $16 or $17 a share. Meridian neither engaged a broker, nor put in

5

place a monitoring scheme or strategy for executing on this collateral. At trial, Meridian did not offer any credible explanation for retaining the stock for eleven months after filing the certificate of default, while the stock continued to deteriorate. While plaintiff's expert, a bank president, testified that Meridian did not act in a commercially reasonable manner in holding the stock, Meridian's expert declined to give an opinion on the matter, one way or the other. It is evident to us that Meridian was derelict in its responsibility to move ahead in good faith and to realize as much as possible for the Solfanellis' benefit.

Nor can we accept the proposition that a demand for a sale of the collateral is a prerequisite in these circumstances for a claim based on a commercially unreasonable delay. FDIC v. Caliendo, 802 F. Supp. 575 (D.N.H. 1992), which the Bankruptcy Court relied upon for that proposition, is inapposite here. We agree with the District Court's analysis regarding Caliendo. In that case, the District Court for the District of New Hampshire found that where a loan was over-collateralized, clearly not the status in the present case, the secured creditor has a duty to preserve the value of the collateral, pursuant to U.C.C. S 9-207(1), only if the debtor requests that the collateral be redeemed. The Court in Caliendo did not address the creditor's duty under S 9-504 to dispose of collateral in a commercially reasonable manner. The Solfanellis have not argued that Meridian had a duty to preserve the value of the FEB stock, and thus we agree with the District Court that Caliendo does not bear on this case. Even if S 9-207 were applicable, however, we think it clear that Meridian cannot be relieved of its obligation under S 9-504 to dispose of the collateral in a commercially reasonable manner, irrespective of a debtor's instruction to sell or to hold.

Similarly unavailing is Meridian's claim that it is immunized from an "unreasonable delay" claim by the Solfanellis based upon the terms of the Stipulation and Security Agreement signed in December of 1990. Paragraph 15 of the Agreement provides:

> No delay or omission in exercising any right, power, or remedy accruing to the Bank upon breach or default by Debtors. . . shall impair any such right, power, or

6

remedy of the Bank, nor shall it be construed to be a waiver of any such breach or default theretofore or thereafter occurring.

Fortunately for debtors such as the Solfanellis, a bank's duty to conduct a commercially reasonable sale is not waivable by any such contract terms. Ford Motor Credit v. Lototsky, 549 F. Supp. 996, 1001 – 1002 (E.D. Pa. 1982), Willis, 593 F.2d 247 (6th Cir. 1979). In particular, we have held previously that despite agreements between the parties, securities must be liquidated in good faith and in a commercially reasonable manner. In re Kaplan , 143 F.3d 807, 818 (3d Cir. 1998). Thus, we are unimpressed by Meridian's invocation of 13 Pa.Cons.Stat.Ann. S 9501 ("the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable") for the proposition that the Agreement is in this manner binding. An Agreement provision attempting to expunge a commercial reasonableness requirement is per se "manifestly unreasonable."

In addition, as did the District Court, we will affirm the Bankruptcy Court's finding that Meridian breached its duty of good faith in making blatantly false statements with an intention to deceive Mr. Solfanelli. The Bankruptcy Court found not only that Meridian never informed Mr. Solfanelli of its dispute with Keefe, Bruyette, and Woods regarding the sale or the subsequent negotiations and settlement, but also deceived Mr. Solfanelli when he asked. The Bankruptcy Court properly found that the potential claim against Keefe, Bruyette, and Woods for "flipping" the shares was an integral part of the "disposition" of the collateral.

In sum, we agree with the Solfanellis that Meridian unreasonably "sat" on this stock for 11 months, i.e., from March, 1991, when Meridian first declared a default, until February, 1992, when the stock was sold. The stock should have been sold at those points in time when its price substantially satisfied the debt. In addition, Meridian employed subterfuge regarding its sale of the stock to and dispute with Keefe, Bruyette, and Woods. Because Meridian failed to sell the collateral in good faith and in a commercially reasonable manner, we presume as a matter

of law that the collateral's value equals the amount of the Solfanellis' indebtedness. Meridian contends that the record evidence demonstrates that the FEB stock could not alone satisfy the Solfanellis' debt at any point. That may or may not be true, but the FEB stock was not the only collateral securing the loan. Taking into account all of the available collateral, Meridian's own evidence makes clear that had Meridian sold the FEB stock when it was trading at over $16 per share, which it was for at least 30 days after the filing of the certificate of default, then the value of the collateral would have exceeded the Solfanellis' total indebtedness. Accordingly, Meridian may not seek a deficiency claim. See 13 Pa. Cons. Stat. Ann. S 9504(c).

II.

The remaining issue is whether Meridian violated the automatic stay by attaching the Solfanellis' bank accounts containing post-petition funds, and if so, whether the Bankruptcy Court reasonably awarded punitive damages to Mrs. Solfanelli. The Bankruptcy Court found that Meridian was overzealous and negligent in its willful attachment of the Solfanellis post-petition funds:

> the Certificate of Default . . . terminated the automatic stay. The further garnishment of the accounts were, thus, appropriately performed with the exception of the [post-petition] funds. While that may have been a simple oversight if occasioned by an inexperienced attorney, Bank counsel. . . was exceptionally knowledgeable of the bankruptcy provisions. That is not to say that said counsel acted maliciously in pursuing these post-petition funds. On the contrary, there is absolutely no evidence that the Bank was anything but overzealous, though negligent, in sweeping the accounts. Still, such disregard is sufficient to support an award of punitive damages.

In re Solfanelli, 206 B.R. at 705.

Meridian argues that it did not violate the automatic stay by this seizure because the stay was not in effect. We agree that Meridian was granted some relief from the stay. However, this relief was only granted as to specific assets,

8

not including bank accounts or post-petition earnings. The Agreement between the parties permitted the Solfanellis to use cash collateral and provided that upon certification of default

> [the] Bank shall be entitled without further notice to relief from the automatic stay of Section 362 and shall be allowed to proceed with the exercise of all remedies available to it in respect of the Existing Indebtedness and Collateral. . . .

(emphasis added). "Collateral" was defined elsewhere in the Agreement and included other enumerated items but not the post-petition funds. We agree with the District Court that Meridian was permitted only to execute against "Collateral" and that the post-petition funds were not "Collateral." Finally, Meridian did not procure a replacement lien and did not have any rights against the funds by virtue of a prepetition lien. 11 U.S.C.S 552(a). Accordingly, we agree with the District Court and Bankruptcy Court that Meridian violated the automatic stay since it exceeded its rights under the Bankruptcy Code and the Agreement.

The Bankruptcy Court may award punitive damages for a stay violation pursuant to 11 U.S.C. S 362(h):

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages.

The Bankruptcy Court, to which we give deference in its factual findings, reasonably found that Meridian's violation was willful; Meridian was aware of the stay and intentionally garnished the accounts containing postpetition funds. The Bankruptcy Court's ruling is in accord with our holdings in this area. See In re Atlantic Bus. and Community Corp., 901 F.2d 325, 328 (3d Cir. 1990) ("willful violation" requires that defendant knew of stay and that actions which violated stay were intentional); See also In re Landsdale Family Restaurants, 977 F.2d 826, 829 (3d. Cir. 1992) (violation "willful" if creditor knows of stay and takes intentional action violating it, and good faith belief insufficient to escape liability).

Once the Bankruptcy Court finds a willful violation, it has discretion to impose punitive damages in "appropriate circumstances." We find that the Bankruptcy Court's award of $10,000 punitive damages is not clearly erroneous, but rather, appropriate, and we will let it stand.

III.

For all the foregoing reasons, we will affirm the District Court's judgment. We remand to the Bankruptcy Court to enter judgment in favor of Meridian on Count II and in favor of Natalie Solfanelli, as well as Joseph Solfanelli, on Count VII.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit