UNISUPER LTD., Public Sector Superannuation Scheme Board, Commonwealth Superannuation Scheme Board, United Super PTY Ltd., Motor Trades Association of Australia Superannuation Fund PTY Ltd., H.E.S.T. Australia Ltd., Care Super PTY Ltd., Universities Superannuation Scheme Ltd., Britel Fund Nominees Limited, Hermes Assured Limited, Stichting Pensioenfonds ABP, Connecticut Retirement Plans and Trust Funds, and The Clinton Township Police and Fire Retirement System, Plaintiffs,

v.

NEWS CORPORATION, a Delaware corporation, K. Rupert Murdoch AC, Peter L. Barnes, Chase Carey, Peter Chernin, Kenneth E. Cowley AO, David F. Devoe, Viet Dinh, Roderick Eddington, Andrew S.B. Knight, Lachlan K. Murdoch, Thomas J. Perkins, Stanley S. Shuman, Arthur M. Siskind, and John L. Thornton, Defendants.

C.A. No. 1699–N.

Court of Chancery of Delaware, New Castle County.

Submitted: May 26, 2006.
Decided: May 31, 2006.

---

**150.** *See Gonsalves v. Straight Arrow Publishers, Inc.,* 2002 WL 31057465, at *13 (Del.Ch. Sept. 10, 2002).

**151.** *Id.*

Stuart M. Grant, Megan D. McIntyre and Cynthia A. Calder, of Grant & Eisenhofer P.A., Wilmington, DE, for Plaintiffs.

Edward P. Welch, Robert S. Saunders, Edward B. Micheletti and T. Victor Clark, of Skadden, Arps, Slate, Meagher & Flom, L.L.P., Wilmington, DE, for Defendants.

J. Travis Laster, of Abrams & Laster, L.L.P., Wilmington, DE, for Objector Liberty Media Corporation.

### MEMORANDUM OPINION

CHANDLER, Chancellor.

On May 23, 2006, this Court heard oral argument at a fairness hearing on the parties' stipulation of settlement of this class action. A single shareholder appeared as an objector to the settlement. At the close of the hearing, I stated that I would approve the settlement if the parties could agree to amend the release language to clarify that the release met the requirements of Delaware law. The parties were able to agree on amended release language and I have reviewed it. I have also considered the arguments of the parties in support of the amended release language and the objector's opposition. For the reasons stated below, I conclude that the release language in the settlement still suffers from two minor deficiencies. I direct the parties to modify the release language so as to cure these problems. Upon completion of that task, I will enter the final order approving the settlement.

## I. BACKGROUND

Plaintiffs filed their complaint on October 7, 2005, asserting five claims in connection with News Corporation's ("News Corp.") announcement that it would extend

its poison pill. News Corp. had previously adopted a board policy of not extending poison pills without a shareholder vote. Board policies are, of course, subject to revision by the board of directors at its discretion. Plaintiffs alleged in their complaint, however, that News Corp. had agreed that if plaintiffs voted for News Corp.'s reincorporation to Delaware from Australia, the board would not rescind its policy regarding extensions of the poison pill.

On December 20, 2005, this Court issued an opinion granting defendants' motion to dismiss three of plaintiffs' five claims.[1] The Court dismissed plaintiffs' claims for fraud, negligent misrepresentation and equitable fraud, but did not dismiss plaintiffs' claims for breach of contract and promissory estoppel.

Defendants immediately filed an application for certification of interlocutory appeal, which this Court granted.[2] The Supreme Court of Delaware declined to hear defendants' appeal.[3] The case then proceeded towards a trial that was scheduled to begin on April 24, 2006.

In early April, the parties communicated to the Court that a settlement of the case might be possible. After extensive negotiations, the parties reached an agreement in principle. In order to facilitate this agreement, plaintiffs filed an amended complaint on April 12, 2006, in order to move for class certification under Court of Chancery Rule 23 (the "Amended Complaint"). Defendants consented to the filing of the Amended Complaint pursuant to Delaware Court of Chancery Rule 15(a).

On April 13, plaintiffs' counsel alerted the Court that the parties had signed a stipulation of settlement (the "Settlement"). The parties filed a motion for an order approving the Settlement and the Court scheduled a fairness hearing for Tuesday, May 23.

On May 12, 2006, Liberty Media Corporation ("Liberty") filed a notice that it intended to object to the Settlement. Liberty is the owner of an 18% equity interest in News Corp. and would be a class-member as defined in the Amended Complaint. Liberty also is significant in this litigation for a second reason: It was Liberty's acquisition of its 18% stake that allegedly caused the News Corp. Board of Directors to extend the poison pill without a shareholder vote in the first place.

At the May 23 hearing, counsel for plaintiffs and defendants spoke in favor of the Settlement. Liberty objected to the Settlement on a single ground: that the proposed release was overly broad. Liberty's objection to the release included four arguments: (1) the release extended to claims not part of the operative or core facts; (2) the release purported to extend to future claims; (3) the plaintiffs should be judicially estopped from asserting that the operative facts of the case include the merits of the decision to extend the poison pill because plaintiffs have expressly stated otherwise; and (4) the release bound non-voting shareholders, forcing them to give up claims in return for a benefit they do not share.

I was not persuaded by the third and fourth arguments, and explicitly stated so at the May 23 hearing.[4] Liberty's second

1. *UniSuper Ltd. v. News Corp.*, 2005 WL 3529317 (Del.Ch. Dec. 20, 2005).

2. *UniSuper Ltd. v. News Corp.*, 2006 WL 207505 (Del.Ch. Jan. 19, 2006).

3. *News Corp. v. UniSuper Ltd.*, 2006 WL 387998 (Del.2006).

4. Liberty, to repeat, was the only class member to object to the Settlement.

argument was more persuasive. At the conclusion of the fairness hearing, I declined to approve the Settlement because I determined that, as drafted, the release language was unnecessarily prolix (to the point of being incomprehensible) and was overly broad, so that it potentially ran aground of the standard set forth by the Delaware Supreme Court in *Nottingham Partners v. Dana.*[5]

In the days following the fairness hearing, the parties redrafted the release language in an effort to cut down on its prolixity and clarify its meaning. Unfortunately, after reviewing the new release language (the "Redrafted Release"), I have concluded that the latest version of the settlement suffers from the same fatal deficiency as the original: the release as drafted is too broad.

## II. REASONING

 A settlement can release claims that were not specifically asserted in an action, but can only release claims that are based on the "same identical factual predicate" or the "same set of operative facts" as the underlying action.[6] Thus, it follows that a release is overly broad if it releases claims based on a set of operative facts that will occur in the future.[7] If the facts have not yet occurred, then they cannot possibly be the basis for the underlying action.

 Additionally, a release may be overbroad if it could be interpreted to "encompass any claim that has *some* relationship—however remote or tangential— to any 'fact,' 'act' or conduct 'referred to' in the Action."[8] In other words, a release is overly broad if it releases claims based on a common set of tangential facts, as opposed to operative or core facts.

The operative facts in this case center on the allegation of a contract between the parties and the allegations regarding the News Corp. Board of Directors' decision to extend the poison pill. Liberty argued at the fairness hearing that the Settlement was overly broad in that it released fiduciary duty claims arising from the decision to extend the pill in 2004. Because I view the operative facts to include the events surrounding the decision to extend the poison pill, I find that this aspect of the release falls within the *Nottingham* standard.

 Liberty also challenges the release on the grounds that it extends to future claims. At the fairness hearing, I expressed concern over portions of the release that purported to apply to future conduct. In the Redrafted Settlement, the parties included a provision clarifying that the release does not extend to "claims challenging the merits of future conduct...." The same sentence, however,

---

5. 564 A.2d 1089 (Del.1989).

6. *Id.* at 1106–7; *see also Steiner v. Sithe–Energies,* 1988 WL 36133, at *2 (Del.Ch. Apr. 18, 1988) (holding that where the same "factual predicate provides the basis for" two actions, the settlement of the Delaware action can preclude claims arising out of the other.)

7. *See Green v. Phillips,* 2000 WL 33521109 at, *1 (Del.Ch. June 28, 2000) (flaw in proposed release was that it was "overly broad insofar as it purported to release claims that could arise in the future"); *see also Schwartz v.*

*Dallas Cowboys Football Club, Ltd.,* 157 F.Supp.2d 561, 578 (E.D.Pa.2001) (finding a release to be "too broad because it bars later claims based on future conduct" and noting that "[a]lthough the law permits a release to bar future claims based on the past conduct of the defendant ... this release would bar later claims based not only on past conduct but also future conduct.")

8. *Green v. Phillips,* 2000 WL 33521109, at *1 (Del.Ch. June 28, 2000) (emphasis in original).

contains a parenthetical excepting claims relating to the adoption of the October 2006 Rights Plan. The October 2006 Rights Plan will be adopted, pursuant to a shareholder vote, at the October 2006 shareholders meeting. I agree with Liberty that a date five months hence is clearly in the future. The rule in Delaware is that a release cannot apply to future conduct. Defendants cite no authority for the proposition that there is an exception for future conduct arising out of, or contemplated by, the settlement itself. Viewed another way, no facts relating to the October 2006 Rights Plan were alleged in the underlying action, much less were they part of the underlying action's operative facts. For these reasons, I conclude that the release is overly broad in that it attempts to release claims arising from an event that has not yet happened, viz., the October 2006 Rights Plan.[9]

■ Liberty also objects to the release on the grounds that it purports to release defendants from liability for "hidden or concealed" claims. The release is quite broad in that it applies to "known or unknown" claims, "apparent or unapparent" claims, and "disclosed and undisclosed claims." I agree with Liberty that, to the extent that the release of "hidden or concealed" claims is not redundant, it can only operate to release claims that the defendants have *affirmatively concealed* from plaintiffs. This part of the release implicates self-interested and disloyal conduct by the defendant fiduciaries and complicity in that conduct by the class' fiduciaries. This language of the release should be stricken, as well as the identical language granting a similar release to plaintiffs.

Defendants cite the Order and Final Judgment dated June 23, 2005, in *In re Fox Entertainment*[10] as an example of a settlement approved by this Court that contained a release purportedly applying to "hidden or concealed" claims. Unfortunately, this precedent does little work for defendants. In the *Fox* matter, there was no objector to the release as drafted and the "hidden or concealed" release language was never placed directly at issue before the Court. Due to the prolix nature of settlement releases, it is unrealistic to expect this Court to parse through each settlement with a fine-toothed comb. Furthermore, to approve the release language in this case on the grounds that similar language has slipped through in previous settlements would be to surrender completely to the "tyranny of the form," with the result that future releases would be weighed down by an ever-lengthening chain of terms.

## III. CONCLUSION

The parties and their counsel have expended great effort in order to move this case as close as it is to a settlement. The proposed settlement is otherwise clearly in the best interests of the class and is tantalizingly close to being approved. If the two sides can agree to remove the problematic language identified above, I am confident that the settlement can be approved. I invite the parties to make one last good faith effort to satisfy the Court's concerns.

IT IS SO ORDERED.

---

9. To be absolutely clear: This parenthetical should be stricken entirely from the release.

10. *In re Fox Entm't Group, Inc. S'holders Litig.,* Del. Ch., Consol. C.A. No. 1033–N, Chandler, C. (June 23, 2005) (ORDER AND FINAL JUDGMENT).