In re **AMERICAN BUSINESS FINANCIAL SERVICES, INC., et al., Debtors.**

**George L. Miller, Trustee, Plaintiff,**

v.

**Greenwich Capital Financial Products, Inc., Ocwen Loan Servicing, LLC, Wells Fargo Bank, N.A., Law Debenture Trust Company of New York, The Berkshire Group LP, Michael W. Trickey, Defendants.**

**Bankruptcy No. 05–10203 (MFW).**
**Adversary No. A–06–50826 (MFW).**

United States Bankruptcy Court, D. Delaware.

Feb. 13, 2007.

Laura Davis Jones, Esquire, Pachulski, Stang, Ziehl, Young, Jones & Weintraub,

Wilmington, DE, Bennett L. Spiegel, Esquire, R. Alexander Pilmer, Esquire, Kirkland & Ellis LLP, Los Angeles, CA, for Greenwich Capital Financial Products, Inc.

Steven M. Coren, Esquire, John W. Morris, Esquire, David Dormont, Esquire, Kaufman, Coren & Ress, P.C., Philadelphia, PA, Deirdre M. Richards, Esquire, Joseph J. McGovern, Esquire, Lawrence J. Tabas, Esquire, Obermayer, Rebman, Maxwell & Hippel LLP, Wilmington, DE, for the Trustee.

Derek C. Abbott, Esquire, Curtis S. Miller, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, Joel L. Miller, Esquire, Adam J. Safer, Esquire, Matthew Z. Krusko, Esquire, Miller & Wrubel, P.C., New York, NY, for Ocwen Loan Servicing LLC.

Linda Richenderfer, Esquire, Chad J. Toms, Esquire, Bifferato, Gentilotti & Balick, LLC, Wilmington, DE, Michael LiPuma, Esquire, Law Office of Michael LiPuma, Philadelphia, PA, for The Berkshire Group LP and Michael W. Trickey.

Thomas B. Kinzler, Esquire, Eric B. Post, Esquire, Kelley Drye & Warren LLP, New York, NY, Frederick B. Rosner, Esquire, Duane Morris LLP, Wilmington, DE, for Wells Fargo Bank, N.A., as Indenture Trustee.

James S. O'Brien, Jr., Esquire, Pryor Cashman Sherman & Flynn LLP, New York, NY, Francis A. Monaco, Jr., Esquire, Monzack & Monaco, PA, Wilmington, DE, for Law Debenture Trust Company of New York, as Indenture Trustee.

1. In this Opinion, the Court makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to adversary proceedings under Rule 9014. Fed. R. Bankr.P. 7052(a) ("Findings of fact

*OPINION*[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of Greenwich Capital Financial Products, Inc. ("Greenwich") for dismissal of the above captioned complaint against it. For the reasons set forth below, the Court will grant the motion in part.

I. *BACKGROUND*

American Business Financial Services, Inc. ("the Debtor") and its subsidiaries operated as a financial services organization that originated and serviced mortgage loans primarily to credit-impaired borrowers. The Debtor raised capital by selling pools of these loans to special purpose entities created for securitization (the "Securitization SPEs"). The Securitization SPEs sold the pools of loans to mortgage loan trusts ("Securitization Trusts"). To raise cash for the purchase of the loans, the Securitization Trusts sold notes or trust certificates secured by the trust assets to investors. In exchange for the loans sold to the Securitization SPEs and Trusts, the Debtor received cash and certificates of beneficial interests in the Trusts that entitled it to receive certain cash flows generated by the Trusts (the "I/O Strips"). The Debtor also retained the right to service the pools of securitized loans for a fee.

On January 21, 2005, the Debtor and certain of its direct and indirect subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On January 24, 2005, the Debtor filed a Motion seeking debtor-in-possession financing, pursuant to which Greenwich[2] agreed

and conclusions of law are unnecessary on decisions of motions under Rules 12....").

2. Clearwing Capital, LLC and Chrysalis Warehouse Funding, LLC (collectively, "Clearwing") and The Patriot Group, LLC

to provide a senior, secured, super-priority $500 million credit facility (the "DIP Facility") to the Debtor. The DIP Facility was secured by substantially all the Debtor's assets, including the I/O Strips which had a book value of $391 million. On March 10, 2005, the Court entered a Final Order approving the DIP Loan. Under the DIP Loan Agreement, the Debtor was required to sell the fee-producing future servicing rights.

Less than a month later, on April 4, 2005, the Debtor publicly announced that a reorganization was not possible. On the same day, the Court approved the terms and conditions of a sale of the Debtor's fee-producing future servicing rights to Ocwen Loan Servicing, LLC ("Ocwen") for approximately $21 million. To consummate the sale, Ocwen and the Debtors executed a Servicing Rights Transfer Agreement (the "Transfer Agreement") on or about April 13, 2005, and a Servicing Agreement on May 1, 2005.

On May 13, 2005, Greenwich declared a default on the DIP Loan. As a result, the bankruptcy case was converted to chapter 7 and George L. Miller was appointed trustee (the "Trustee").

On July 20, 2005, the Trustee and Greenwich entered into a Conditional Consent and Undertaking (the "Consent Agreement") whereby the Trustee agreed to sell certain whole loan assets of the Debtor (which were collateral of Greenwich) pursuant to section 363 of the Bankruptcy Code. Under the Consent Agreement, the Trustee would receive $300,000 of the sale proceeds for the benefit of the Debtor's estate. The Trustee, on behalf of the Debtor, agreed to release Greenwich

from any and all claims. On August 19, 2005, the Court approved the Consent Agreement and the sale of the whole loan assets to Credit–Based Asset Servicing and Securitization, LLC for $29,626,846.

Thereafter, Greenwich foreclosed on thirteen I/O Strips which it sold at public auction on June 28, 2006, pursuant to Article 9 of the Uniform Commercial Code. The I/O Strips were sold to Ocwen[3] for $5.1 million.

On September 13, 2006, the Trustee filed a Complaint against Greenwich, Ocwen, Michael W. Trickey, The Berkshire Group, LP, and Wells Fargo Bank, N.A. and Law Debenture Trust Company of New York (collectively, the "Indenture Trustees"). The Trustee asserts the following twelve claims against Greenwich: (1) turnover; (2) fraudulent transfer avoidance and recovery under the Bankruptcy Code; (3) fraudulent transfer avoidance and recovery under state law; (4) request for an accounting; (5) breach of fiduciary duty; (6) aiding and abetting a breach of fiduciary duty; (7) breach of contract; (8) common law fraud; (9) civil conspiracy; (10) conversion; (11) objections to and subordination of Greenwich's claims; and (12) declaratory relief.

A Motion to dismiss the Complaint was filed by Greenwich on October 13, 2006. The Trustee opposes the Motion. Briefing on the Motion is complete, and the matter is now ripe for decision.

## II. JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(1). Many of the counts are core matters pur-

("Patriot") also had a $1 million participation in the DIP Loan. As part of a settlement, their participation interests were assigned to the chapter 7 Trustee.

3. Prior to the sale, Ocwen was the servicer of the loans related to those I/O Strips under the Transfer Agreement.

suant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), (K), & (O).

## III. DISCUSSION

Greenwich moves for dismissal of the claims against it under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, which are made applicable to adversary proceedings by Rules 7012(b) and 7009 of the Federal Rules of Bankruptcy Procedure, respectively. Specifically, Greenwich argues that the Trustee's Complaint fails to state a claim for which relief can be granted and fails to plead fraud with particularity.

### A. Standard of Review

#### 1. Rule 12(b)(6) Dismissal

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). To succeed on a Rule 12(b)(6) motion to dismiss, the movant must establish "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *City of Phila. v. Lead Indus. Ass'n, Inc.,* 994 F.2d 112, 118 (3d Cir.1993). "In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." *Carino v. Stefan,* 376 F.3d 156, 159 (3d Cir.2004). All reasonable inferences are drawn in favor of the plaintiff. *Kost,* 1 F.3d at 183. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *See also Maio v. Aetna, Inc.,* 221 F.3d 472, 482 (3d Cir.2000); *In re OODC, LLC,* 321 B.R. 128, 134 (Bankr.D.Del.2005) ("Grant-ing a motion to dismiss is a 'disfavored' practice.").

#### 2. Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement must provide the defendant with fair notice of the claim filed against it. *See, e.g., Williams v. Potter,* 384 F.Supp.2d 730, 733 (D.Del.2005) ("Vague and conclusory factual allegations do not provide fair notice to a defendant.") *citing United States v. City of Phila.,* 644 F.2d 187, 204 (3d Cir.1980).

#### 3. Rule 9(b) Dismissal

▮▮▮ Where a complaint asserts a claim for fraud, however, the standard for pleading is higher. The complaint must set forth facts with sufficient particularity to apprise the defendant of the charges against him so that he may prepare an adequate answer. *In re Global Link Telecom Corp.,* 327 B.R. 711, 718 (Bankr.D.Del. 2005). To provide fair notice the complainant must go beyond merely parroting statutory language. *Id. See also In re Circle Y of Yoakum, Texas,* 354 B.R. 349, 356 (Bankr.D.Del.2006). A bankruptcy trustee, as a third party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud. *Global Link,* 327 B.R. at 717.

### B. Greenwich's Motion to Dismiss

#### 1. Release Provision in the Consent Agreement

▮▮▮ Greenwich first argues that the release provision in the Consent Agreement bars all the Trustee's asserted claims against it. *Fox v. Rodel, Inc.,* No. 98–531–SLR, 1999 WL 588293, at *8 (D.Del. July 14, 1999) ("Under Delaware law, a release

is valid and binding when there has been a meeting of the minds of the parties, when the release is supported by consideration, and when there has been no fraud, misrepresentation, mistake, duress, or undue influence.").

Initially, the Trustee asserts that the release only bars actions that accrued before July 20, 2005 (the date of the Consent Agreement). *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 58 (3d Cir.2001); *UniSuper Ltd. v. News Corp.*, 898 A.2d 344, 347 (Del.Ch. 2006). The release provision of the Consent Agreement provides:

> The Trustee, on behalf of the Debtor's estates, hereby releases, discharges, and acquits the Lenders ... from any and all claims, ... which the Trustee or his respective successors ... *have ... or hereafter can or may have against any of the Released Parties* in any way arising from or related to any action or inaction of any of the Released Parties....

(Consent Agreement at ¶ 3 (emphasis added).) The language "have ... or may have" includes all existing claims and contemplates the release of future claims.

The Court concludes, however, that the parties could not have intended to release all future claims (however they may arise) but only those based on the same set of operative facts as existing claims, which had not accrued at the time of the release. *See, e.g., Medtronic*, 247 F.3d at 58 ("[A] release usually will not be construed to bar a claim which had not accrued at the date of its execution or a claim which was not known to the party giving the release."); *UniSuper Ltd.*, 898 A.2d at 347 (holding that "a release is overly broad if it releases claims based on a set of operative facts that will occur in the future. If the facts have not yet occurred, then they cannot possibly be the basis for the underlying

action."); *Fox*, 1999 WL 588293, at *6 ("The primary consideration in interpreting a release is to give effect to the intent of the parties at the time they contracted...."). Therefore, the Court concludes that the release in the Consent Agreement would only cover those claims that the Trustee establishes had arisen at the time the Consent Agreement was executed or which are based on the same set of underlying facts as those related to the aforesaid claims.

### 2. *Fraud on the Court*

The Trustee further contends that the entire Consent Agreement is null and void because it was procured by Greenwich's "continued deception and fraud upon the Court." (Complaint at ¶ 49.) *See, e.g., In re Northwestern Corp.*, 313 B.R. 595, 603 (Bankr.D.Del.2004) ("A release may be set aside if it was obtained fraudulently."); *Norton v. Poplos*, 443 A.2d 1, 4 (Del.1982) (stating that a fraudulent misrepresentation may lead to voidance of a contract).

The Third Circuit applies a very demanding legal standard to establish fraud upon the court. *Herring v. United States*, 424 F.3d 384, 389 (3d Cir.2005). To prove fraud upon the court the Trustee must establish: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court." *Id.* at 390. The Trustee and Greenwich both agree that to establish a claim for fraud upon the court a party must first prove common law fraud under state law. *RCA Corp. v. Data Gen. Corp.*, 701 F.Supp. 456, 471–72 (D.Del. 1988) ("To establish fraud on the court, a party must present evidence of fraud which does or attempts to defile the court itself ... so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." (internal quo-

tations and citations omitted)); *Herring,* 424 F.3d at 390 (explaining that "fraud on the court must constitute egregious misconduct ... such as bribery of a judge or jury or fabrication of evidence by counsel." (internal quotations and citations omitted)). To plead common law fraud under Delaware law,[4] a party

> must plead facts supporting an inference that: (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.

*Abry Partners V, L.P. v. F&W Acquisition LLC,* 891 A.2d 1032, 1050 (Del.Ch.2006).

In the Complaint, the Trustee alleges that Greenwich had appraised the I/O Strips which served as collateral for the DIP Facility at $90 million, but refrained from openly disputing the Debtor's approximately $400 million book valuation at various hearings before the Court. (Complaint at ¶ 2.) Greenwich agreed to the $500 million DIP Facility with the Debtor, which was secured in part by the I/O Strips. (*Id.*) The Trustee asserts that Greenwich remained mute about its own valuation of the I/O Strips in order to obtain the Court's approval of the DIP Loan and to receive the accompanying $15.75 million fee. (*Id.*) Further, the

Trustee alleges that Greenwich concealed the relationship[5] between Trickey and Ocwen and the Indenture Trustees. Specifically, the Trustee alleges that Greenwich misled the Trustee into believing that Trickey was operating in the best interest of the Debtor's estate in overseeing the Debtor's assets. (*Id.* at ¶ 50.)

Greenwich initially moves for dismissal of the claims for common law fraud and aiding and abetting common law fraud on the grounds that the claims are not stated with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

The Trustee responds that the Rule 9(b) "particularity" requirement is relaxed when a third party such as a bankruptcy trustee alleges fraud. *In re APF Co.,* 274 B.R. 634, 638 (Bankr.D.Del.2001) (explaining "where the plaintiff is a trustee acting on behalf of the estate or a group of creditors, courts apply Rule 9(b) with greater flexibility recognizing that trustees often lack knowledge or have only second-hand knowledge of prepetition fraudulent acts involving the debtor and third parties."). The Court agrees with the Trustee and will not dismiss the fraud count on this basis.

■ Greenwich also contends that the alleged misrepresentation of which the Trustee complains was a statement of opinion that cannot support a fraud claim. Further, Greenwich asserts that it had no duty to speak.

The Trustee's fraud claims against Greenwich are based on allegations that Greenwich failed to disclose its own inter-

---

4. Although the DIP Loan Agreement is governed by New York law, the tort actions are governed by Delaware law because the alleged fraudulent activity primarily occurred in proceedings before this Court. *See, e.g., Travelers Indem. Co. v. Lake,* 594 A.2d 38, 47–48 (Del.1991) (applying the law of the jurisdiction with the most "significant relationship" to the occurrence and the parties).

5. Trickey was the Managing Director of Berkshire and the Chief Investment Officer of Ocwen. The Indenture Trustees hired Berkshire and Trickey to manage the I/O Strips.

nal lower valuation of the I/O Strips, conspired with Ocwen to convert the Debtor's property, and misrepresented Trickey's relationship to Ocwen. The Trustee, however, fails to allege any facts from which the Court could conclude that Greenwich had a "duty to disclose" its valuation of the I/O Strips or Trickey's relationship to Ocwen.

Moreover, there is no allegation that the Debtor justifiably relied on any representations made by Greenwich concerning the value of the I/O Strips. In fact, the Final DIP Order provides to the contrary:

> The Agent [Greenwich], the Lenders . . . *have made no representations,* offered no opinions, and have taken no positions, either individually or collectively, *regarding the value of any portion of the Collateralized Sub-debt Shared Collateral, and, in determining the value of the Collateralized Sub-debt Shared Collateral, the Debtors have not relied upon any representation, opinion, or position of the Agent or the Secured Parties in regard thereto.*

(Final DIP Order at 17 (emphasis added).) The Debtor agreed to a similar provision in the DIP Loan Agreement. (DIP Loan Agreement at ¶ 10.03.) Therefore, there can be no claim that the Debtor reasonably relied on any representations or omissions by Greenwich.

Consequently, the Court concludes that the Trustee has failed to plead a claim of common law fraud or fraud on the court. As a result, the Court will dismiss the common law fraud, fraud on the court, and aiding and abetting fraud claims for failure to state a claim for relief but will grant the Trustee leave to amend the count. Fed. R.Civ.P. 15(a) ("[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."); *Circle Y,* 354 B.R. at 356 (dismissing fraud claims but granting

leave to amend to add specific facts concerning alleged fraud).

### 3. *Breach of Fiduciary Duty*

■ Greenwich moves for dismissal of the breach of fiduciary duty claim on the basis that it is controverted by the express language of the DIP Loan Agreement and by state law. The DIP Loan Agreement provides at ¶ 11.13(b) that "each of the Agent and the Lenders has no fiduciary relationship to the Borrowers, and the relationship between the Borrowers and the Agent and the Lenders is solely that of debtor and creditor." *See, e.g., Waldorf v. Shuta,* 142 F.3d 601, 612 (3d Cir.1998) ("In interpreting a stipulation, courts should consider its plain language and the circumstances surrounding the formation of the [s]tipulation which may explain its meaning." (internal quotations and citation omitted)); *In re Bettis,* 97 B.R. 344, 347 (Bankr.W.D.Tex.1989) (concluding that a chapter 7 trustee appointed after conversion of the case to chapter 11 was bound by the stipulations made by the debtor-in-possession).

The Trustee argues that when Greenwich declared a default on the loan it became a fiduciary under New York law. He asserts that Greenwich's failure to liquidate the I/O Strips in a commercially reasonable manner was a breach of that duty. *Solfanelli v. Corestates Bank, N.A.,* 203 F.3d 197, 200 (3d Cir.2000) ("[I]n liquidating the collateral, the creditor acts as the debtor's fiduciary and has a corresponding good faith duty to maximize the proceeds of the collateral's sale."). Further, the Trustee asserts that the fiduciary relationship imposed as a matter of law cannot be vitiated or abrogated by the terms of the DIP Loan Agreement.

The Court agrees with the Trustee. Both parties concede that the DIP Loan Agreement and the resulting secured cred-

itor/borrower relationship between Greenwich and the Debtor is governed by New York law. (DIP Loan Agreement at ¶ 11.11.) While the Third Circuit interpreted Pennsylvania's Commercial Code in *Solfanelli,* the relevant provisions of the New York Commercial Code are identical to Pennsylvania's.[6]

■ Thus, the Court concludes that Greenwich had a fiduciary duty to dispose of the collateral in a commercially reasonable manner. *Solfanelli,* 203 F.3d at 200. Further, that duty cannot be waived by contract. *Id. See also* N.Y. U.C.C. Law § 1–102(3) (McKinney 2001) ("the obligations of good faith, diligence, reasonableness and care prescribed by this Act may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.")

■ Accordingly, the Trustee has stated a claim for relief by alleging that Greenwich breached its fiduciary duty by failing "to protect, preserve, and maximize the value of the Debtor's property, including the I/O Strips and the cash flow and other sums." (Complaint at ¶ 126.) *Solfanelli,* 203 F.3d at 200 ("[T]he test to determine 'commercial reasonableness' should be whether the sale's every aspect is characterized by: (1) good faith, (2) avoidance of loss, and (3) an effective realization."). Consequently, the Court will not dismiss the breach of fiduciary duty claim against Greenwich.

### 4. *Aiding and Abetting a Breach of Fiduciary Duty*

■ Greenwich argues that the Court must dismiss the aiding and abetting claim because the Trustee failed to allege particular facts showing Greenwich's "knowing participation in the breach" of a fiduciary duty by others pursuant to the heightened pleading requirements of Rule 9(b). *McGowan v. Ferro,* 859 A.2d 1012, 1041 (Del.Ch.2004) ("To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must plead ... (i) the existence of a fiduciary relationship; (ii) a breach of that relationship; (iii) knowing participation in the breach by a defendant who is not a fiduciary; and (iv) damages...."); *Am. Mobile Commc'ns, Inc. v. Nationwide Cellular Serv., Inc.,* No. 91 Civ. 3587(LBS), 1992 WL 232058, at *6 (S.D.N.Y. Sep.3, 1992) (concluding that a "claim of breach of fiduciary duty is subject to the particularity requirements of Rule 9(b) [if] it relies heavily on allegations of fraudulent conduct"); *Wight v. Bankamerica Corp.,* No. 98 CIV.2010 (RPP), 1999 WL 335321, at *1 n. 1 (S.D.N.Y. May 26, 1999) (requiring application of Rule 9(b) to aiding and abetting a breach of fiduciary duty claim when one of the essential elements of the claim was fraud).

The Trustee responds that the pleading requirements of Rule 9(b) do not apply to aiding and abetting breach of fiduciary duty claims based on fraud. *See, e.g., In re Fruehauf Trailer Corp.,* 250 B.R. 168, 197–98 (D.Del.2000) ("[T]he Rule 9(b) heightened pleading requirement generally does not apply to the state law claims of breach of fiduciary duty ... aiding and abetting breach of fiduciary duty, and

---

6. *See generally,* 13 Pa. Cons.Stat. Ann. § 9504(c) (West 2000) (providing that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable."); N.Y. U.C.C. Law § 9–504 (McKinney 2000) (same); 13 Pa. Cons.Stat. Ann. § 9610(b) (West 2003) ("Every aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable."); N.Y. U.C.C. Law § 9–610(b) (McKinney 2002) (same).

breach of contract."); *In re InaCom Corp.*, Nos. 00–2426(PJW), 00–1115, 2001 WL 1819987, at *2 (Bankr.D.Del. Aug.7, 2001).

The Court agrees with the Trustee. Delaware courts generally do not apply Rule 9(b) to state law claims of breach of fiduciary duty. *Fruehauf,* 250 B.R. at 197–98; *InaCom Corp.*, 2001 WL 1819987, at *2. Applying the relaxed standards of notice pleading, the Court concludes that the Trustee's Complaint states a claim.

■ In the Complaint the Trustee alleges that he has filed a lawsuit against seven former officers and directors of the Debtor and five financial institutions in state court. The Trustee alleges that Greenwich, a pre-petition lender of the Debtor, had profited by assisting those officers, directors and certain financial institutions "in fraudulently prolonging the Debtor's business." (Complaint at ¶¶ 18, 22–24.)

■ Greenwich responds that because those officers, directors, and financial institutions are not named defendants in the case at bar, the Trustee's aiding and abetting claim must fail. The Court disagrees. To the extent the Trustee can establish in this case that those officers and directors breached their fiduciary duty and that Greenwich aided and abetted them, the Court can grant appropriate relief against Greenwich.

Consequently, the Court concludes that the Trustee has stated a claim for aiding and abetting a breach of fiduciary duty.[7] Accordingly, the Court will not dismiss this claim against Greenwich.

---

7. The Trustee also asserts a claim against Greenwich for aiding and abetting a breach of fiduciary duty by the Indenture Trustees, but for the reasons set forth in a companion Opinion, the Court concludes that the Indenture Trustees owed no fiduciary duties to the Debtor.

### 5. *Fraudulent Transfer*

In the Complaint, the Trustee's fraudulent transfer count states as follows:

105. Paragraphs 1 through 104 above are incorporated herein by reference, as though set forth in full.

106. The Defendants orchestrated, participated in and/or aided and abetted the fraudulent transfers of the Debtor's property (collectively, the "Transfers"), including the $15.75 million fee paid to Greenwich, the interest and sums paid to Greenwich, the transfers of the 13 I/O strips, the balance of the holdback, the payment of fees to Berkshire, the payment of fees to the Indenture Trustees, and the prepayment penalties and other sums to which the Debtor was entitled, all of which were improperly transferred to and retained by the Defendants.

107. The Defendants made the Transfers with the intent to hinder, delay and/or defraud the Debtor and its creditors.

108. The Defendants orchestrated, participated in and/or aided and abetted the Transfers for their own benefit.

109. The Debtor failed to receive reasonably equivalent value in exchange for the Transfers.

(Complaint at ¶¶ 105–09.) The state law fraudulent transfer count contains similar language. (Complaint at ¶¶ 114–21.) The Trustee seeks recovery of the $15.75 million fee, default interest and other fees paid to Greenwich, the transfer of the thirteen I/O Strips, and the cash flows from all the I/O Strips. (Complaint at ¶ 106.)

■ Greenwich argues that the fraudulent transfer claims are barred by the

express language of the Final DIP Order. The Final DIP Order expressly provides:

Subject to the rights of the Creditors' Committee provided herein, *none of the Loan Documents nor this Final Order, nor any provision of any thereof, nor any right arising thereunder, nor any transfer made thereunder,* including the Obligations, *shall be voidable or avoidable* under Bankruptcy Code Sections 544 or 548 or any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law.

(Final DIP Order at 42 (emphasis added).) Greenwich has asserted a facially valid affirmative defense to the fraudulent transfer claims. *Flight Sys., Inc. v. Elec. Data Sys. Corp.,* 112 F.3d 124, 127 (3d Cir.1997) (concluding that an affirmative defense may be determined on a Rule 12(b)(6) motion "if it presents an insuperable barrier to recovery by the plaintiff.").

The Trustee counters Greenwich's arguments by contending that the claims are derived from Greenwich's fiduciary duties to the Debtor and thus the contractual provisions could not vitiate those duties. N.Y. U.C.C. Law § 1–102(3) (providing that "obligations of good faith, diligence, reasonableness and care prescribed by" the Commercial Code cannot be disclaimed by agreement).

The Court agrees with the Trustee. The Trustee may seek to avoid those transfers related to Greenwich's disposition of collateral pursuant to New York's Commercial Code because the duty to dispose of the collateral in a commercially reasonable manner was not vitiated by the Final DIP Order. Further, by entering the Final DIP Order, the Court did not authorize Greenwich to breach its fiduciary duties or to commit fraud.

Greenwich also contends that the post-petition transactions are not avoidable be-cause they were authorized by the Court. *See, e.g., Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815–16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (holding that the doctrine of the law of the case precludes the court from revisiting rules of law already decided by the court in earlier proceedings); 11 U.S.C. § 549(a) (allowing a trustee to avoid post-petition transactions only if they were unauthorized). If the transfers resulted from Greenwich's breach of fiduciary duty or were fraudulent, however, they were not "authorized" by the Court in the Final DIP Order.

■■ Greenwich further asserts that even if the Final DIP Order did not apply, the allegations of actual fraud were not pled with particularity. The Court agrees with Greenwich that the Trustee's allegations regarding actual fraud are conclusory and not pled with sufficient particularity. While the Court affords a trustee in bankruptcy greater liberality in pleading fraud, the Court does not allow mere recitation of statutory language and conclusory allegations. *See, e.g., Circle Y,* 354 B.R. at 356 (dismissing the fraud count because "the Trustee recite[d] general, conclusory allegations that almost completely parrot[ed] the statutory language.") Here, although the Trustee has stated that Greenwich engaged in fraud on the court in the paragraphs incorporated into the fraudulent transfer count, as discussed in Part B.2 above, the Trustee has not stated that fraud with sufficient particularity.

■■ Greenwich next contends that the constructive fraud claim fails because the transfer was on account of an antecedent debt, thus value was given in exchange for the Debtor's property. *See, e.g.,* Del Code Ann. tit. 6, § 1303 (1996) ("Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt

is secured or satisfied."); 11 U.S.C. § 548(d)(2)(A) (defining value as "property, or satisfaction or securing of a present or antecedent debt of the debtor").

The Court finds Greenwich's argument unpersuasive. The issue is not whether "value" itself was exchanged, but rather whether "reasonably equivalent" value was given in exchange for the transfer of property. *In re Exide Techs., Inc.*, 299 B.R. 732, 748 n. 8 (Bankr.D.Del.2003) ("The definition contained in § 548(d)(2)(A) is unhelpful for this inquiry since it merely defines value, not reasonably equivalent value, which is a requirement in determining a fraudulent transfer.") The Third Circuit utilizes a totality of the circumstances test in determining whether reasonably equivalent value was given, and that factual inquiry is not suitable for determination on a motion to dismiss. *See, e.g., Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 148–149 (3d Cir.1996); *Peltz v. Hatten*, 279 B.R. 710, 736 (D.Del.2002); *Exide*, 299 B.R. at 748 ("The value of the collateral guarantees and pledges necessarily requires an evidentiary record from which a court may rule.").

Accordingly, the Court concludes that the Trustee has not plead sufficient facts to state a claim for actual fraud in his fraudulent transfer count, but the Court will allow the Trustee to amend his Complaint to satisfy this requirement. Fed. R.Civ.P. 15(a).

### 6. Breach of Contract

■ Greenwich contends that the breach of contract claim must be dismissed because the Complaint fails to allege facts that indicate what specific contractual provisions were breached. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir.1994) ("Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.").

The Trustee, on the contrary, asserts that the factual allegations in the Complaint provide fair notice of the claims against Greenwich. *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir.1998) ("[A] plaintiff generally need not explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary to sustain recovery.").

The Court agrees with Greenwich. The only references in the Complaint to this count are:

135. The Conduct of Greenwich, Ocwen and the Indenture Trustees constitutes a breach by each such Defendant of their contractual obligations to the Debtor and the Trustee under the applicable contracts, including but not limited to the DIP Financing, Loan Agreement, and other agreements incident to the DIP Financing, the Servicing Rights Transfer Agreement, the Servicing Agreements, and the trust indentures and agreements with the Indenture Trustees.

136. As a result of the Defendants' breach of contract, the Debtor suffered the damages previously alleged.

(Complaint at ¶¶ 135–36.) The Trustee has failed to allege what specific contractual provisions have been breached by Greenwich. A party cannot prepare an adequate answer or defense if it is not provided this information in the Complaint.

Accordingly, the Court will dismiss the breach of contract claim, but will grant the Trustee leave to amend the Complaint to add the provisions of the contracts that were allegedly breached by Greenwich.

Fed.R.Civ.P. 15(a); *Circle Y,* 354 B.R. at 356 (granting leave to amend upon a dismissal of a fraudulent transfer claim).

### 7. *Turnover*

■ The Trustee seeks turnover under section 542 of the Bankruptcy Code of the thirteen I/O Strips and other collateral that were allegedly converted, interest and fees collected after the alleged conversion, and holdback, prepayment penalties and other sums wrongfully paid to Greenwich. Greenwich contends that the turnover claim under section 542 is premature because title to the property is in dispute. *See, e.g., In re Student Fin. Corp.,* 335 B.R. 539, 554 (D.Del.2005) (holding that "in order to state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate."); *In re Hechinger Inv. Co. of Del., Inc.,* 282 B.R. 149, 161 (Bankr. D.Del.2002) (concluding that a turnover claim failed under Rule 12(b)(6) because proceeds of a letter of credit are not property of the estate and "[t]he fact that Debtor may have equitable interests in certain breach of contract claims which seek to recover the Drawn Funds, which interests constitute property of the estate, does not alter the result.").

The Trustee contends that the property was indisputably the Debtor's and was merely held as collateral by Greenwich. 11 U.S.C. §§ 541, 542(a) (2006).

The Court disagrees to the extent Greenwich properly exercised its contractual rights to foreclose on the collateral upon default. Further, the money paid to Greenwich as interest and fees was cash to which the Trustee cannot claim title, but rather must get a judgment to collect. In essence, therefore, the Trustee's right to turnover depends on the validity of his action for breach of fiduciary duty, wrongful conversion of the seized collateral after default, and the other counts of the Complaint. Because title to the property is in dispute, a claim for turnover cannot arise at this stage. Consequently, the Court will dismiss the turnover claim.

### 8. *Conversion*

■ The Trustee argues that Greenwich wrongfully converted the collateral by conspiring with Ocwen to lower the value of the collateral. *See, e.g., Arnold v. Soc'y for Sav. Bancorp, Inc.,* 678 A.2d 533, 536 (Del.1996) ("Conversion is an act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." (internal quotations and citation omitted)). In this regard, the Complaint provides:

> The Conduct of ... Greenwich and Ocwen as aforesaid constituted conversion of the Debtor's property, including but not limited to conversion of (a) the 13 I/O Strips, (b) the remaining I/O Strips, (c) the cash flow from the I/O Strips, (d) the holdback and, (e) other sums and property that belong to the Debtor.

(Complaint at ¶ 146.)

Greenwich argues that the Court should dismiss this claim because (1) the Debtor agreed to the disposal of the I/O Strips in the DIP Loan Agreement and (2) the "other property" that was allegedly converted is not adequately identified in the Complaint. (DIP Loan Agreement ¶ 9(a)-(b).) *See, e.g., Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.,* No. 05 CV 4260(GBD), 2006 WL 2015188, at *7 (S.D.N.Y. July 13, 2006) ("To establish conversion the plaintiff must demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing." (internal quotations and citation omitted)).

The Trustee's only response is that the conversion claim is proper because it stems from Greenwich's post-default breach of fiduciary duty.

The Court agrees with Greenwich. In the case at bar, to the extent Greenwich properly exercised its rights under the DIP Loan Agreement to pursue various remedies on the Debtor's default, there was no wrongful exertion of dominion over the Debtor's property. Further, the Trustee's reference to "other sums and property that belong to the Debtor" insufficiently identifies allegedly converted property of the Debtor. (Complaint at¶ 146.) *See, e.g., Gateway Overseas,* 2006 WL 2015188, at *7.

Accordingly, the Court will dismiss the conversion claim for failure to state a claim for relief. The Court will, however, grant the Trustee leave to identify more specifically what wrongful act of dominion over the Debtor's property Greenwich committed and what "other sums and property that belong to the Debtor" were converted by Greenwich. Fed.R.Civ.P. 15(a).

### 9. *Civil Conspiracy*

Greenwich moves for dismissal of the civil conspiracy claim on the grounds that it is not based on an underlying wrong and it is pled insufficiently. Under Delaware law, the elements of a conspiracy claim are: "(1) [a] confederation or combination of two or more persons; (2)[a]n unlawful act done in furtherance of the conspiracy; and (3)[a]ctual damage." *Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149–50 (Del.1987); *Ramunno v. Cawley,* 705 A.2d 1029, 1039 (Del.Super.Ct.1998) (explaining that a "civil conspiracy is not an independent cause of action in Delaware, and that it must arise from some underlying wrong."); *Kalmanovitz v. G. Heileman Brewing Co.,* 595 F.Supp. 1385, 1401 (D.Del.1984) ("Only al-legations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.").

The Trustee argues that the pleading was sufficient. In his Complaint the Trustee pleads the following under the conspiracy count:

141. Paragraphs 1 through 140 are incorporated herein by reference, as though set forth in full.

142. The Defendants conspired with each other, and others, in an effort to perpetrate, facilitate, and aid and abet the frauds and other wrongs alleged herein.

143. The Defendants took substantial overt acts, as aforesaid, in furtherance of the conspiracy alleged herein and are liable for the damage and harm to the Debtor.

144. As a result of the Defendants' conspiracy, the Debtor suffered the damages previously alleged.

(Complaint at ¶¶ 141–44.)

The Court concludes that these allegations are insufficient. In *Kalmanovitz,* the plaintiff alleged conspiracy as follows:

83. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 82 as if fully set forth herein.

84. Each defendant has agreed and conspired with one or more of the other defendants to violate the laws of the United States and the State of Delaware, as set forth above.

595 F.Supp. at 1400. The District Court in *Kalmanovitz* found that language insufficient to relate the circumstances surrounding the wrongdoing with particularity and, therefore, dismissed the conspiracy count. *Id.* at 1401.

Similarly, the Court concludes that in this case the facts surrounding the alleged civil conspiracy are pled inadequately. Accordingly, the Court will dismiss the civil conspiracy claim. The Court will, however, allow amendment of the Complaint to state the claim with particularity. Fed. R.Civ.P. 15(a).

### 10. *Equitable Subordination*

The Trustee seeks equitable subordination of Greenwich's claim under section 510(c) of the Bankruptcy Code "[a]s a result of the Defendant's breach of fiduciary duty, inequitable conduct and other wrongdoing." (Complaint at ¶ 150.). Greenwich seeks dismissal of this claim asserting that the Trustee does not sufficiently allege inequitable conduct. *See, e.g., Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims,* 160 F.3d 982, 986–87 (3d Cir.1998) (stating that most courts require proof of the following for an equitable subordination claim: "(1) the claimant must have engaged in some type of inequitable conduct, (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination of the claim must not be inconsistent with the provisions of the bankruptcy code."); *In re Nutri/Sys. of Fla. Assocs.,* 178 B.R. 645, 657 (E.D.Pa.1995) ("If the claimant is not an insider or fiduciary, the trustee must prove more egregious conduct such as fraud, spoilation, or overreaching and prove it with particularity.").

The Trustee argues in response that the claims for fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty support a finding of egregious conduct sufficient to warrant equitable subordination. *See, e.g., OODC,* 321 B.R. at 146 (finding that the plaintiff alleged sufficient facts of fraud and aiding and abetting a breach of fiduciary duty and concluding that, if proven, those claims would provide a basis for a finding of egregious conduct which would warrant equitable subordination of claims).

The Court agrees with the Trustee. As discussed above the Court has found that there were sufficient factual allegations to support the Trustee's claims of breach of fiduciary duty and aiding and abetting a breach of fiduciary duty. Thus, the factual allegations in the Complaint allege sufficient inequitable conduct that, if proven, would support a claim for equitable subordination. (Complaint at ¶¶ 1–150.) Consequently, the Court concludes that the Trustee has stated a claim for equitable subordination and will deny the motion to dismiss this count.

### 11. *Accounting*

Greenwich argues that it has no duty to account and the claim is moot because it has already sent the Trustee an accounting. *McMahon v. New Castle Assocs.,* 532 A.2d 601, 605 (Del.Ch.1987) (noting that "an accounting by a non-fiduciary has been required by a court of equity only when the accounts are so complex that the legal remedy is likely to prove inadequate" and further holding that accounting was not proper when the plaintiff could obtain the information through discovery).

The Trustee, in response, argues that the accounting Greenwich sent was not in compliance with the Trustee's demand. He further asserts an accounting is a proper remedy for the breach of fiduciary duty claim.

The Court agrees with the Trustee that a claim for an accounting has been stated. A secured party which disposes of collateral has a duty to account to the debtor. N.Y. U.C.C. Law § 9–613(a)(4) (McKinney 2002) (providing that pre-disposition notice must state that "the debtor is entitled to

an accounting of the unpaid indebtedness and ... the charge, if any, for an accounting"); N.Y. U.C.C. Law § 9–608(a)(4) ("A secured party shall account to and pay a debtor for any surplus, and the obligor is liable for any deficiency.").

Because the Trustee has sufficiently pled only that Greenwich owed the Debtor a fiduciary duty in disposing of the collateral, however, the claim for an accounting for all other matters must fail. *See McMahon*, 532 A.2d at 605. Accordingly, the Court concludes that, to the extent Greenwich has not provided the proper accountings required under the New York Commercial Code, the accounting count states a claim for relief. The portions of the accounting request that do not relate to the duty to account imposed by the Commercial Code will be dismissed.

### 12. *Declaratory Relief*

The Trustee also seeks declaratory relief for the underlying tort claims alleged in the Complaint. (Complaint at ¶ 155.) Greenwich argues that the declaratory relief claim fails because the underlying tort claims fail.

The Court agrees with Greenwich in part. To the extent that the declaratory relief relates to the dismissed claims, it will also be dismissed. To the extent that claims remain, however, declaratory relief may be appropriate. The Court will not dismiss this count.

### 13. *Consequential and Punitive Damages*

■ Greenwich seeks dismissal of the Trustee's claim for punitive damages on the basis that section 11.04(b) of the DIP Loan Agreement precludes such an award of damages. Section 11.04(b) of the DIP Loan Agreement provides that "[i]n no event, ... shall [Greenwich] be liable on any theory of liability for any special, indi-rect, consequential, or punitive damages." (DIP Loan Agreement at § 11.04(b).) The Trustee responds that the DIP Loan Agreement could not waive a claim for punitive damages which arises from Greenwich's breach of fiduciary duty.

■ The Court agrees with the Trustee. A waiver provision in a contract cannot limit damages for intentional torts. *See, e.g., Kalisch–Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385, 461 N.Y.S.2d 746, 448 N.E.2d 413 (N.Y.1983) (holding that an exculpatory clause that limited liability for intentional wrongdoing was unenforceable). Consequently, the Court concludes that the waiver provision is unenforceable as to any alleged intentional torts against Greenwich. Accordingly, the Court will not dismiss the claim for punitive damages.

## IV. *CONCLUSION*

For the foregoing reasons, the Court concludes that Greenwich's Motion to Dismiss will be granted in part.

An appropriate Order is attached.

### *ORDER*

**AND NOW,** this **13th** day of **February, 2007,** after consideration of the Motion of Greenwich Capital Financial Products, Inc., for dismissal of the Trustee's Complaint against it and the Trustee's opposition thereto, it is hereby

**ORDERED** that the Motion to Dismiss filed by Greenwich Capital Financial Products, Inc., is **GRANTED, IN PART** and **DENIED, IN PART;** and it is further

**ORDERED** that the common law fraud, fraud on the court, breach of contract, turnover, conversion, and civil conspiracy counts are **DISMISSED;** and it is further

**ORDERED** that the portions of the accounting count that do not relate to the

duty to account imposed by the Commercial Code are **DISMISSED;** and it is further

**ORDERED** that the declaratory relief count is **DISMISSED** to the extent that it relates to the dismissed tort claims; and it is further

**ORDERED** that the Trustee is **GRANTED** leave to amend his Complaint, within thirty days, to plead the common law fraud, fraud on the court, breach of contract, conversion, and civil conspiracy claims with further particularity.

