# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **SUPPI CONSTRUCTION, INC.** <br> a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. N18L-11-009 AML |
| v. | ) ) | |
| **EC DEVELOPMENTS I, LLC,** <br> a Nevada corporation, <br> **FRONTIER BUILDING CORP.,** <br> a Florida corporation, <br> **PANDA RESTAURANT GROUP, INC.,** <br> a California corporation, <br> **PANDA EXPRESS, INC.**, <br> a California corporation, <br> **MBOS CONCESSIONS, LLC**, <br> a Delaware limited liability company, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: September 27, 2022
Decided: December 8, 2022

## ORDER

## Upon Plaintiff's Motion to Enforce Settlement Agreement: DENIED

1.     The plaintiff seeks to enforce a settlement agreement it contends the parties reached in May or June 2022.  Although it is undisputed that the parties agreed to an amount to be paid to resolve the plaintiff's claims, they could not agree on the scope of a release of claims.  That disagreement caused the plaintiff to represent to this Court that the action was not settled and that the plaintiff was not

1

willing to engage in further discussions. Then, three weeks later, the plaintiff purported to accept the last settlement agreement proposed by the defendant, which the plaintiff previously had rejected as unacceptable. The question before this Court is whether these circumstances meet the plaintiff's burden to prove that the parties agreed upon all essential settlement terms. Because the record does not support the plaintiff's position that the parties entered into an enforceable agreement, the plaintiff's motion is denied.

**FACTUAL BACKGROUND**

2. This action arises out of a Subcontract (the "Subcontract") between Defendant Frontier Building Corp. ("Frontier") as general contractor and Plaintiff Suppi Construction, Inc. ("Suppi") as subcontractor. The Subcontract related to site work for construction of a new Panda Express Restaurant at 4704 Kirkwood Highway, Wilmington, Delaware (the "Property").

3. On November 5, 2018, Plaintiff filed a complaint and statement of mechanic's lien (the "Complaint") against Frontier and several other entities.[1] The Complaint sought a mechanic's lien and an *in rem* judgment in the amount of $114,647.98 against the Property. The Complaint also sought judgment in the amount of $114,647.98 against Frontier based upon an alleged breach of the Subcontract and against Panda Restaurant Group, Inc., Panda Express Inc. and

---

[1] Compl. ¶¶ 2-6.

MBOS Concessions LLC (collectively the "Panda Entities") under theories of quantum meruit and unjust enrichment. Finally, the Complaint asserted a claim against Frontier for an alleged violation of 6 *Del. C.* § 3501.

4.      Trial in this matter was scheduled to begin on May 2, 2022.[2] In the weeks before trial, the parties engaged in settlement negotiations. As a result of those efforts, the parties reached an agreement on an amount to be paid to resolve the litigation, subject to negotiating the terms of a formal settlement agreement, including an acceptable mutual release.[3]

5.      On April 26, 2022, Plaintiff circulated a proposed settlement agreement (the "April 26 Proposal").[4] The April 26 Proposal contained release language that was not wholly reciprocal.  Specifically, Plaintiff's release of claims against Defendants expressly excluded claims for fraud and for conduct after the date of the agreement, while Defendants' release of claims against Plaintiff did not contain those exclusions.[5] Defendants responded on April 26 that the release language was not acceptable.

---

[2] Trial in this matter was delayed several times. Trial initially was scheduled to take place on November 29, 2021, but was rescheduled to May 2, 2022, when the parties requested additional time for discovery and to prepare the pretrial stipulation. On February 28, 2022, Defendants' counsel asked the Court to refer the case to mediation in advance of trial. The Court granted the request on March 3, 2022.  Then, on April 6, 2022, Defendants' counsel requested a one-week extension to mediate the case. The Court granted the extension.

[3] Defendants' Response in Opposition to Plaintiff's Motion to Enforce Settlement Agreement and for an Award of Attorneys' Fees (hereinafter ""Defs.' Resp. in Opp.") at 3, Ex A.

[4] Defs.' Resp. in Opp. at 3, Ex. B.

[5] *Id*. at 3, Ex. B ¶¶ 4-5.

6. On April 28, 2022, Plaintiff circulated another proposed settlement agreement (the "April 28 Proposal"). The April 28 Proposal eliminated the exclusion for fraud but continued to exclude a release of potential claims against Defendants arising out of any conduct occurring after the date of the settlement agreement.[6] In other words, the release Plaintiff proposed to give Defendants still was not reciprocal. Defendants refused to accept the April 28 Proposal.

7. Later that day, the Court conducted a status and pretrial conference (the "Pretrial Conference"). During the Pretrial Conference, the parties represented to the Court that they had been unable to settle the case because they could not reach an agreement on the terms of a release. Counsel agreed they were not prepared to try the case on May 2nd. As a result of this update, the Court ordered the parties to reach a settlement or participate in a further round of mediation by May 20, 2022. If the parties were unable to resolve the case by May 20th, the Court would provide counsel a new trial date.[7]

8. On May 11, 2022, Defendants circulated a revised proposed settlement agreement (the "May 11 Proposal"). The May 11 Proposal struck the non-reciprocal release language favoring Plaintiff and added additional language related to the scope of the mutual release. Defendants' proposal struck the release language that

[6] *Id*. at 3, Ex. C ¶ 4.
[7] Judicial Action Form, D. I. 113.

4

expressly excluded claims arising in the future, and specifically listed "Contract" and "Contract Work" as included within the release.[8] On May 19, 2022, in response to the May 11 Proposal, Plaintiff advised Defendants that "the edits proposed by the defendants are not acceptable to Suppi."[9]

9. On May 20, 2022, the parties provided a status update to the Court (the "May 20 Status Report").[10] The May 20 Status Report informed the Court that the parties had not been able to agree upon the settlement language. Plaintiff advised the Court that Plaintiff had provided its "definitive position on settlement language." Defendants stated Plaintiff's proposed settlement language was unreasonable and Defendants remained willing to mediate.

10. Three weeks later, without any further discussion between the parties, Plaintiff sent Defendants a signed copy of the previously rejected May 11 Proposal, which Plaintiff edited to include a new proposed payment date of June 30, 2022. Defendants responded on June 27, 2022. In their response, Defendants stated Plaintiff had rejected the May 11 Proposal, and payment on the terms now requested by Plaintiff should not be expected.

11. The Court convened another status conference on July 12, 2022. During that conference, Plaintiff took the position that the matter was settled upon Plaintiff

---

[8] Defs.' Resp. in Opp. at 3, Ex. D ¶ 4.
[9] *Id*. at 4, Ex. E.
[10] *Id*. at 4, Ex. F.

signing the May 11 Proposal. For that reason, Plaintiff argued further mediation was not warranted. Plaintiff filed this Motion to Enforce the Settlement Agreement (the "Motion") on July 27, 2022. Plaintiff's Motion also seeks an award of attorneys' fees. The parties argued the Motion on September 27, 2022, after which the Court took the Motion under advisement.

## ANALYSIS

12. The issue before the Court is whether the parties reached a binding settlement agreement. Delaware courts encourage negotiated resolutions to contested cases, and settlement agreements are enforceable as contracts.[11] As the party seeking to enforce the purported agreement, Plaintiff bears the burden of proving the existence of a contract by a preponderance of the evidence.[12] In determining whether Plaintiff has met its burden, the Court must inquire:

> whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations . . . .[13]

---

[11] *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. Jun. 29, 2010); *Asten, Inc. v. Wangner Sys. Corp.*, 1999 WL 803965, at *1 (Del. Ch. Sept. 23, 1999).
[12] *Schwartz,* 2010 WL 2601608, at *4.
[13] *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1285 (Del. Ch. 2004) (quoting *Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1097 (Del. Ch. 1986)).

It is the parties' overt manifestations of assent, rather than their subjective intent, that controls the determination of whether an agreement was reached on all material terms.[14]

13. Delaware law requires a contract to contain all material terms in order to be enforceable, and specific performance only will be granted when an agreement is clear, definite, and a court does not need to supply essential contract terms.[15] When settlement terms are left to future negotiation, as they were in this case, the enforceability of an agreement depends on "the relative importance and severability of the matter left to the future."[16] The relative importance of a term is by its nature a fact-intensive inquiry. The absence of an agreement on a particular term has been found to be immaterial where other terms in the parties' agreement allow the Court to enforce the parties' bargain.[17] Where, however, the unresolved terms are material and the parties' intent cannot be gleaned from other aspects of the agreement, no enforceable contract exists.[18]

---

[14] *United Health All., LLC v. United Med., LLC*, 2013 WL 6383026, at *6 (Del. Ch. Nov. 27, 2013).

[15] *Ramone v. Lang*, 2006 WL 905347, at *10 (Del. Ch. Apr. 3, 2006).

[16] *Asten, Inc.*, 1999 WL 803965, at *2.

[17] *Spacht v. Cahall,* 2016 WL 6298836, at *4 (Del. Super. Ct. Oct. 27, 2016) (citing *Asten, Inc.*, 1999 WL 803965, at *2–3 (concluding unresolved administrative issue as to how to effect division of proceeds paid in kind rather than in cash did not constitute omission of material term); *Hendry v. Hendry*, 1998 WL 294009, at *2 (Del. Ch. June 3, 1998) (holding exact property line description was not an essential term because other terms of the contract allowed the Court to enforce the parties' agreement)).

[18] *Spacht,* 2016 WL 6298836, at *4 (citing *Schwartz*, 2010 WL 2601608, at *10-11).

14.     Plaintiff advances two independent theories in support of its Motion. First, Plaintiff contends the parties reached a settlement on May 11, 2022, because they agreed to all material terms on that date. According to Plaintiff, the scope of the release language was not a material term and therefore the parties' failure to agree as to the precise scope of a release does not preclude a finding that a settlement was reached.  In order to resolve this argument, the Court must determine whether the scope of the release language was "so essential to the bargain that to enforce the promise would render enforcement of the rest of the agreement unfair."[19]

15.     Plaintiff argues that on May 11, 2022, when Defendants removed from the release the exclusion for claims arising after the date of the settlement agreement and listed "Contract" and "Contract Work" as part of the release,[20] Defendants did not request any other substantive edits to the language the parties had negotiated. As such, Plaintiff contends, the parties had a meeting of the minds and were in agreement on all other terms and language as of that date.[21] Plaintiff maintains the only issue left to negotiate was whether the release contained any carve out for claims arising in the future.[22] According to Plaintiff, Defendants' attempt to expand the release to include future claims was of no material significance because "[t]he

---

[19] *Asten, Inc.*, 1999 WL 803965, at *2.
[20] Plaintiff's Motion to Enforce Settlement Agreement and for an award of Attorneys' Fees (hereinafter "Pl.'s Mot.") at 2, Ex. A, ¶ 4.
[21] *Id*. at 2.
[22] *Id*. at 2-3.

rule in Delaware is that a release cannot apply to future conduct."[23] Therefore, according to the Plaintiff, there was nothing of consequence left to negotiate after Defendants made the May 11 Proposal, and an enforceable settlement had been reached.[24]

16.     Second, Plaintiff argues that even if the parties did not reach an agreement on May 11th, the parties came to a meeting of the minds on June 13th when Plaintiff accepted the May 11 Proposal.[25]  On June 13, 2022, Plaintiff responded to its own May 19th email, writing to Defendants that "Suppi has decided to sign Defendants' last form of settlement agreement."[26] Plaintiff signed a "clean" copy of the May 11 Proposal and changed the payment deadline to June 30, 2022.[27] Plaintiff claims that other than the change in the payment deadline, Plaintiff accepted the May 11 proposal as presented by Defendants, which was a "mirror image acceptance."[28]

17.     Defendants, on the other hand, argue no enforceable agreement was reached because (1) the language of the release was an essential settlement term upon which the parties did not agree, and (2) Plaintiff's rejection of the May 11

[23] *Id*. at 3 (citing *UniSuper Ltd. v. News Corp.,* 898 A.2d 344, 348 (Del. Ch. 2006)).
[24] *Id*. at 2.
[25] *Id*. at 3-4, ¶¶ 8-9. On May 19, 2022, Plaintiff responded to Defendants' May 17th email inquiring about a response to the proffered edits to the release reflected in the May 11 Proposal. Plaintiff stated that "the edits proposed by [D]efendants are not acceptable." According to Plaintiff, Defendants did not respond to this correspondence by indicating that the May 11 Proposal was withdrawn or that Defendants' position had changed before June 13, 2022, when Plaintiff responded to its own email and accepted the May 11 Proposal. Pl's. Mot. at 3.
[26] *Id*. at 2, Ex. F.
[27] *Id*. at 4.
[28] *Id*.

Proposal foreclosed Plaintiff's ability to accept it later.[29]  As to Plaintiff's first argument,  Defendants contend the parties' words and actions establish that the release language was an essential, unresolved settlement term.[30] Defendants assert that on two occasions (April 28 and May 20), the parties advised the Court that settlement had not been reached because the parties were unable to agree on the terms of the release.[31] Defendants further contend Plaintiff's argument concerning the practical and legal significance of the release carve-outs does not affect the materiality of the release language to the parties.[32] Moreover, Defendants assert the carve-out language's significance to Plaintiff was evidenced by its insistence that the future claims language remain in the proposed settlement agreement.[33]

18.    As to Plaintiff's second argument, Defendants contend Plaintiff expressly rejected the May 11 Proposal on May 19, 2022, and Plaintiff advised Defendants and the Court that the terms of its April 28 Proposal contained Plaintiff's definitive position on settlement language.[34]  Defendants contend Plaintiff's express rejection of the May 11 Proposal and subsequent statement that it only would accept the release language in the April 28 Proposal was a rejection and counteroffer that

---

[29] Defs.' Resp. in Opp. at 5-6.
[30] *Id*. at 5.
[31] *Id*.
[32] *Id*. at 6.
[33] *Id*.
[34] *Id*.

terminated Plaintiff's power to accept the May 11 Proposal.[35] Defendants therefore contend Plaintiff's attempt to accept the May 11 Proposal on June 13, 2022 is unenforceable and no agreement exists between the parties.[36]

19. Neither of Plaintiff's arguments satisfy its burden on this Motion. First, the record unequivocally establishes the parties had not reached a binding settlement agreement on May 11, 2022. Plaintiff informed the Court on April 28, 2022 at the Pretrial Conference that no settlement agreement had been reached as of that date.[37] On May 11, 2022, Defendants circulated a revised proposed settlement agreement. That May 11 Proposal changed the scope of the release Plaintiff previously proposed.

20. On May 19, 2022, in response to the May 11 Proposal, Plaintiff advised Defendants that "the edits proposed by the defendants are not acceptable to Suppi."[38] On May 20, 2022, Plaintiff reported to the Court that the parties had not been able to resolve their remaining disagreements, and Plaintiff had provided its definitive position on settlement language.[39] As of May 20, 2022, Plaintiff's conduct did not objectively manifest an intent to be bound by Defendants' May 11 Proposal.

---

[35] *Id.* at 6-7.
[36] *Id.* at 7.
[37] *Id.* at 3, ¶5.
[38] *Id.* at 4, Ex. E.
[39] *Id.* at 4, Ex. F.

21.    Although Plaintiff now contends the scope of the release was not a material term, this Court must consider the parties' overt manifestations of assent, rather than their subjective intent, to determine whether they reached an agreement on all material terms.[40]    The parties' conduct during the negotiation period demonstrated the materiality of the release to both sides.    Plaintiff repeatedly informed the Court that it had not reached an agreement with Defendants because the release language was not resolved.    These representations show that the parties did not believe they had formed an enforceable agreement. Whether the scope of a release would be "material" in all cases is not an issue this Court needs to resolve. Here, the parties' communications among themselves and to the Court established that the scope of the release was material to them and was the single issue preventing them from advising the Court that a settlement had been reached. Neither side indicated in May 2022 that the scope of the release was not material.

22.    Moreover, Plaintiff's argument in the Motion that the parties' disagreement regarding the scope of the release was irrelevant because settled Delaware law controlled the issue does not alter the materiality of the release to the parties or their unequivocal representations to the Court that no settlement had been reached.    Plaintiff contends the only issue left to negotiate was whether the release

---

[40] *Spacht,* 2016 WL 6298836, at *2 (citing *United Health All., LLC*, 2013 WL 6383026, at *6).

contained any carve out for claims arising in the future.[41] Even if Plaintiff's view of the caselaw regarding future claims is correct, however, what matters is the parties' objective manifestations of intent. At the time of the parties' communications regarding the scope of the release, Plaintiff continued to resist agreeing to settlement terms that the Plaintiff now contends were immaterial. This new view of the parties' negotiations cannot revise the otherwise unambiguous record regarding Plaintiff's position and representations in May 2022.

23.     As to Plaintiff's alternative theory, Plaintiff rejected the May 11 Proposal and therefore could not accept it in June 2022. It is a basic tenet of contract law that an offer, once rejected, cannot be accepted unless renewed.[42] In Plaintiff's view, it accepted the Defendant's May 11 Proposal on June 13th as a mirror image acceptance. But Plaintiff's express rejection of the May 11 Proposal on May 19th and later statement that it only would accept the release language in the April 28 Proposal was a rejection and counteroffer that terminated Plaintiff's power to accept the May 11 Proposal on June 13th.

24.     Plaintiff nevertheless argues Defendants never formally withdrew their offer and Plaintiff therefore retained the power to accept it.[43] Plaintiff has not cited

---

[41] Pl.'s Mot. at 2-3.

[42] *PAMI–LEMB I Inc. v. EMB–NHC, L.L.C.*, 857 A.2d 998, 1015 (Del. Ch. 2004) (by making a counteroffer, party rejected the initial offer and terminated its power to accept that offer); *see also Ramone*, 2006 WL 905347, at *10 (Delaware has adopted the mirror-image rule, which requires an acceptance to be identical to an offer).

[43] Pl.'s Mot. at 3.

to any caselaw requiring an offeror to formally withdraw an offer that already has been rejected. Once Plaintiff rejected the May 11 Proposal on May 19th, there was no pending offer for Defendant to withdraw or for Plaintiff to accept. Defendants never renewed the May 11 Proposal. Defendants' statement to the Court on May 20th expressing a willingness to engage in another round of mediation was not an unambiguous renewal of the terms of the May 11 Proposal. In short, on June 13th, there was no open offer for Plaintiff to accept, and Plaintiff's attempt to do so could not bind Defendants.

25.    For the foregoing reasons, Plaintiff has not established by a preponderance of the evidence that the parties formed a settlement agreement, and the Plaintiff's Motion to Enforce the Settlement Agreement therefore is **DENIED**. In accordance with the Court's order on April 28, the parties shall schedule an *in-person* mediation to be held by January 20, 2023. Counsel shall provide the Court with an update on January 23, 2023. If the case has not resolved by that date, a new trial date will be established. **IT IS SO ORDERED.**

 /s/ Abigail M. LeGrow
Abigail M. LeGrow, Judge

14